PREPAID MARKETING MEETING EXPENSE AGREEMENT

This Agreement is entered into effective as of December 29, 2003, by and between The Prudential Insurance Company of America ("Prudential") and Clark Consulting, Inc. ("Clark Consulting").

WHEREAS, Prudential Investment Management Services LLC ("PIMS") has entered into a Broker-Dealer Agreement ("PIMS Agreement") with Clark/Bardes Financial Services, Inc. ("Broker") dated January 24, 2002 pursuant to which PIMS authorized Broker to market, solicit, procure, and submit applications for COLI/TOLI Contracts and Broker agreed to locate appropriate purchasers for the COLI/TOLI Contracts and identify for PIMS the particular needs of Purchasers regarding the negotiable provisions of the COLI/TOLI Contracts.

WHEREAS, Pruco Securities Corporation ("PruSec") has entered into a Broker Dealer Selling Agreement ("PruSec Agreement") with Clark/Bardes Securities, Inc. ("Broker-Dealer") dated April 15, 1999 pursuant to which PruSec authorized Broker-Dealer to solicit and market variable life and/or variable annuity contracts on behalf of Prudential.

WHEREAS, Broker procured Allmerica as the purchaser of two Prudential Group COLI/TOLI Contracts.

WHEREAS, Allmerica tendered their Group COLI/TOLI Contracts for surrender, effective October 31, 2003.

WHEREAS, in accordance with the Allmerica commission schedule to the PIMS Agreement, Broker is obliged to return the unearned commissions paid under those contracts.

WHEREAS, the amount now due and immediately payable to Prudential is $2,879,960.78 ("$2.9 million").

WHEREAS, both Clark and Prudential desire to enhance their sales relationship prospectively.

NOW, THEREFORE, in consideration of the mutual promises, conditions and covenants as set forth below, the parties agree as follows:

1.0  WAIVER OF AMOUNT DUE; PREPAID CONFERENCES.

1.0.1 Prudential hereby irrevocably waives the Clark Consulting obligation to pay the $2.9 million that is due and immediately payable to Prudential with respect to the surrender of the Allmerica Group COLI/TOLI contract. All of the provisions of the PIMS Agreement remain in full force and effect.

1.0.2 Clark Consulting hereby grants to Prudential a $3.5 million Marketing Meeting Expense Allowance to be used solely towards sponsorship of the Conferences identified under Section 3.0. Except as otherwise provided in Article 5.0 of this Agreement, the Marketing Meeting

Expense Allowance has no immediately redeemable value and may only be used as credit toward future Conference fees.

2.0 COMPENSATION AND CONFERENCE FEES

2.0.1 While this Agreement is in effect, Clark Consulting will waive the Conference Fees charged each year by Clark Consulting for attendance at the Conferences until such time as the Marketing Meeting Expense Allowance is exhausted. The amount waived will be the actual conference fee charged to similarly situated insurance company participants (anticipated to be $225,000 in 2004). The unused Marketing Meeting Expense Allowance will be reduced by the amount of Conference Fees waived.

3.0 CONFERENCES

Clark Consulting shall:

(i) Invite two (2) representatives of Prudential to the Clark Consulting Banking Roundtable (or successor meeting).

(ii) Invite two (2) representatives of Prudential to the Clark Consulting Healthcare CEO Forum (or successor meeting).

(Collectively the "Conferences".)

4.0 TERM AND TERMINATION

4.0.1 This Agreement will become effective as of the date set forth above and, unless terminated in accordance with this Article 4.0, will remain in force until the date on which the entire Marketing Meeting Expense Allowance has been applied to the payment of conference expenses and has been exhausted.

4.0.2 This Agreement may be terminated immediately for cause by Prudential upon occurrence of one of the following:

(i) Upon conviction of Clark Consulting or any of its officers, directors, or supervisory personnel of any felony or fraud or of any crime involving dishonesty;

(ii) Upon Clark Consulting's or any of its officers, directors, or employees material failure to acquire or continuously maintain all licenses required by state or federal law or cancellation of or refusal to renew by the insurance regulatory authority any license, certificate or other regulatory approval required by Clark Consulting or its successors and assigns to perform their duties under this Agreement;

(iii) Upon any material violation by Clark Consulting or any of its respective officers, directors, or employees of any rule or regulation of any regulatory authority having

jurisdiction which would materially adversely affect Clark Consulting's and its successor's and assign's ability to satisfy its obligations under this Agreement; or

(iv)   Upon Clark Consulting's or any of its officers, directors, or employees failure to perform or observe any material term, covenant or agreement contained in this Agreement and any such failure shall remain unremedied for 30 days after the receipt from Prudential of written notice thereof.

(v)   Upon failure of Clark Consulting to use its reasonable best efforts to illustrate and promote Prudential products in appropriate situations from inception of this Agreement to December 31, 2006. Prudential and Clark Consulting shall meet prior to December 31, 2006 to discuss whether Clark Consulting has used its reasonable best efforts and further discuss remedies in the event that Prudential determines that Clark Consulting has failed to use its reasonable best efforts. In the event that Prudential determines that such failure cannot be remedied, Prudential may elect to terminate this Agreement effective December 31, 2007. Prudential shall give written notice to Clark Consulting no later than November 30, 2007 of its election to terminate this Agreement pursuant to this Section.

4.0.3 This Agreement may be terminated immediately for cause by Clark Consulting upon occurrence of one of the following:

(i)   Upon Prudential's bankruptcy, insolvency, conviction of their officers or supervisory personnel of any felony or fraud or of any crime involving dishonesty;

(ii)   Upon Prudential's material failure to acquire or continuously maintain all licenses required by state or federal law, or cancellation of or refusal to renew by the insurance regulatory authority any license, certificate or other regulatory approval required by Prudential to perform their duties under this Agreement;

(iii)   Upon any material violation by Prudential or its officers, employees or agents of any rule or regulation of any regulatory authority having jurisdiction which would materially adversely affect Prudential's ability to satisfy its obligations under this Agreement; or

(iv)   Upon Prudential's failure to perform or observe any material term, covenant or agreement contained in this Agreement and any such failure shall remain unremedied for 30 days after the receipt from Clark Consulting of written notice thereof.

(v)   Upon Prudential's failure to respond promptly to requests for illustrations and product support. "Failure to respond promptly" means failure to respond by the mutually agreeable deadline for a response negotiated by Prudential and Clark Consulting and documented in writing at the time of the request for illustrations and/or product support.

4.0.4   This Agreement may be extended by the parties, from year to year, after the date on which the entire Marketing Meeting Expense Allowance has been applied to the payment of conference expenses and has been exhausted.

5.0 COMPENSATION FOR PRUDENTIAL'S FAILED EXPECTATIONS

5.0.1 In the event that some or all of the Conferences are discontinued without successors or in the event that it otherwise becomes impossible for Prudential to participate in some or all of the Conferences, Clark Consulting shall pay Prudential compensation as determined under Section 5.0.2 for its failed expectations.

"Impossible" shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement (which is being amended and restated contemporaneously with the execution of this Agreement) has been terminated; or (c) Prudential has withdrawn from the COLI business. Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience.

5.0.2 In the event of Prudential's failed expectations under Section 5.0.1, Clark Consulting shall pay Prudential an amount equal to the Unused Marketing Meeting Expense Allowance. The Unused Marketing Meeting Expense Allowance is defined as the Marketing Meeting Expense Allowance reduced by the cumulative amount of Conference Fees waived.

5.0.3 In the event that Prudential terminates this Agreement for cause, Clark Consulting shall pay PIMS an amount (not in excess of $2.9 million) equal to the Unused Marketing Meeting Expense Allowance reduced (but not below $0.0) by 50% of the NBF Fees received by Prudential in the first year of all contracts placed by Clark Consulting with Prudential since inception of this Agreement.

6.0 INDEMNIFICATION/LEGAL PROCEEDINGS

6.0.1 Indemnity Definitions. The following definitions shall apply for purposes of this Article:

"Prudential Claim" means any civil, administrative and/or criminal action, claim, suit, and/or legal proceeding of any kind that is brought against a Prudential Indemnitee by a third party (the "Claimant") unaffiliated with such Indemnitee which arises out of, is based upon, or otherwise relates to any loss, damage, liability, deficiency, cause of action, costs or expense, including reasonable attorneys' fees and costs of litigation, on account of any (i) misrepresentation, whether or not intentional, made by Clark Consulting in connection with this Agreement; (ii) failure of Clark Consulting to fulfill any of its agreements or covenants under this Agreement; (iii) event of default; or (iv) negligent or willful or wanton conduct by Clark Consulting or persons employed or appointed by Clark Consulting in connection with this Agreement.

"Clark Consulting Claim" means any civil, administrative and/or criminal action, claim, suit, and/or legal proceeding of any kind that is brought against a Clark Consulting Indemnitee by a third party (the "Claimant") unaffiliated with such Indemnitee which arises out of, is based upon, or otherwise relates to any loss, damage, liability, deficiency, cause of action, costs or expense, including reasonable attorneys' fees and costs of litigation, on account of any (i) misrepresentation, whether or not intentional, made by Prudential in connection with this Agreement; (ii) failure of Prudential to fulfill any of its agreements or covenants under this

Agreement; (iii) event of default; or (iv) negligent or willful or wanton conduct by Prudential or persons employed or appointed by Prudential in connection with this Agreement.

"Claim" means Prudential Claim or Clark Consulting Claim as appropriate.

"Costs" means any damages, settlements, judgments, losses, expenses, interest, penalties, reasonable legal fees and disbursements (including without limitation fees and costs for investigators, expert witnesses and other litigation advisors) and other costs incurred by an Indemnitee to investigate, defend or settle a Claim, except that no settlement payments shall be included in Costs unless the applicable Indemnitor has given its prior express written consent to the settlement, which consent shall not be unreasonably withheld.

"Indemnitee" shall mean a party entitled to the right of Indemnification under this Agreement.

"Indemnitor" shall mean a party obligated to provide indemnification hereunder.

6.0.2 Clark Consulting's Liability. In accordance with the procedures set forth herein, Clark Consulting shall indemnify and hold harmless Prudential and its shareholders, directors, officers, employees, affiliates, agents, representatives, successors and assigns (collectively, "Prudential entities"), from and against any and all Prudential Claims and related Costs filed or assessed against any of Prudential entities.

6.0.3 Prudential's Liability. In accordance with the procedures set forth herein, Prudential shall indemnify and hold harmless Clark Consulting and its shareholder, directors, officers, employees, affiliates, agents, representatives, successors and assign (collectively, "Clark Consulting entities"), from and against any and all Clark Consulting Claims and related Costs filed or assessed against any of Clark Consulting entities.

6.0.4 Indemnification Claim Notice and Case Management. In the event that any Claim is brought against any Indemnitee that might require indemnification from Indemnitors, the Indemnitee promptly shall give notice thereof to each of the Indemnitors. The failure to give such notice shall not affect the Indemnitee's ability to seek reimbursement unless such failure has materially and adversely affected the Indemnitor's ability to successfully defend a Claim. At any time after such notice, any Indemnitor may deliver to the Indemnitee its written acknowledgement that Indemnitee is entitled to indemnification under this Article 6.0 for all Costs associated with the Claim. The Indemnitors shall thereafter be entitled to assume the defense of the Claim and shall bear all expenses associated therewith, including without limitation, payment on a current basis of all previous Costs incurred by the Indemnitee in relation to the Claim from the date the Claim was brought. After notice from any Indemnitor to the Indemnitee of an election to assume the defense of any Claim, the Indemnitee shall not be liable to the Indemnitors for any Costs related to the Claim. Until such time as Indemnitee receives notice of an Indemnitor's election to assume the defense of any Claim, Indemnitee may defend itself against the Claim and may hire counsel and other experts of its choice and Indemnitors shall be liable for payment of counsel and other expert fees on a current basis as the same are billed.

6.0.5 Cooperation and Updates. To the extent that an Indemnitee makes a claim for indemnification against an Indemnitor, Indemnitee and Indemnitor shall each give the other reasonable access during normal business hours to its books, records and employees and those books, records and employees within its control in connection with the Claim for which indemnification is sought hereunder and shall otherwise cooperate with one another in the defense of any such Claim. Regardless of which party defends a particular Claim, the defending party shall give the other parties written notice of any significant development in the case as soon as practicable, but in any event within five (5) business days after such development.

6.0.6 Settlement. If an Indemnitee is defending a Claim and: (1) a settlement proposal is made by the Claimant, or (2) the Indemnitee desires to present a settlement proposal to the Claimant, then the Indemnitee promptly shall notify the Indemnitor of such settlement proposal together with its counsel's recommendation. If the Indemnitee desires to enter into the settlement and the Indemnitor does not consent within five (5) business days (unless such period is extended, in writing, by mutual agreement of the parties hereto), then Indemnitor, from the time they fail to consent forward, shall defend the Claim and shall further indemnify the Indemnitee for all Costs associated with the Claim which are in excess of the proposed settlement amount even if the same were not originally covered under this Article 6.0. If an Indemnitor is defending a Claim and a settlement requires an admissions of liability by Indemnitee or would require Indemnitee to either take action (other than purely ministerial action) or refrain from taking action (due to an injunction or otherwise), Indemnitor may agree to such settlement only after obtaining the express, written consent of Indemnitee.

6.0.7 Indemnification Disputes. In the event that there is a dispute between an Indemnitee and an Indemnitor over whether the Indemnitor is liable for a Claim, then:

(i)     Indemnitee shall defend the Claim in accordance with the provisions of Section 6 hereof in the same manner and under the same terms as though there were no dispute and Indemnitor had failed to elect to defend the Claim itself and Indemnitee shall have the right to settle such Claim pursuant to Section 6.0.6 hereof;

(ii)    In addition, Indemnitor must advise Indemnitee of such a dispute and the reasons therefore, in writing, within thirty (30) days after the Claim is first tendered to Indemnitor unless the Indemnitee and Indemnitor mutually agree, in writing, to extend the time; and

(iii)   The Indemnitee and the Indemnitor shall use good faith efforts to resolve any dispute as to Indemnitor's indemnification obligation.

Should those efforts fail to resolve the dispute, the ultimate resolution shall be determined in a de novo proceeding, separate and apart from the underlying Claim brought by the Claimant, before a court of competent jurisdiction. No finding or judgment in any litigation on the underlying Claim, except for Cost amounts, shall be given any weight in the court proceedings on the indemnification issue. Either party may initiate such proceedings with a court of competent jurisdiction at any time following the termination of the efforts by such parties to resolve the dispute (termination of such efforts shall be deemed to have occurred 30 days from the commencement of the same unless such time period of extended by the written mutual

agreement of the parties). The prevailing party in such a proceeding shall be entitled to recover reasonable attorneys' fees, costs and expenses. From and after the dates on which responsibility for a disputed indemnity Claim is resolved: (i) Indemnitor shall pay all Costs that are determined by the parties or the court, as the case may be, to be allocable to any such Claim which is determined to be a Claim subject to indemnity and (ii) Indemnitee shall reimburse Indemnitor for all Costs previously paid by Indemnitor which are allocable to such Claim determined to be a claim not subject to indemnity.

6.0.8 Multiple Claims. If the Claimant asserts both Claims subject to indemnity and Claims not subject to indemnity in the same action, Indemnitee shall defend the Claim in accordance with the provisions of Section 6.0.4 hereof in the same manner as though Indemnitor had failed to elect to defend the Claim itself and Indemnitee shall have the right to settle such Claims pursuant to Section 6.0.6 hereof (subject to Indemnitor's right to assume the defense of such Claims pursuant to such Section 6.0.4). Indemnitor and Indemnitee each shall be responsible for all Costs associated with the Claim for which they are responsible (i.e., Indemnitor for Claims subject to indemnity and Indemnitee for Claims not subject to indemnity). The parties shall use good faith efforts to agree on a reasonable and appropriate allocation of such Costs. If the parties fail to agree on the appropriate allocation, the dispute shall be decided in accordance with the methodology set forth in Section 6.0.7 (c) hereof.

6.0.9 Survival of Indemnification Provisions. The indemnification provisions of this Article 6.0 shall survive the termination of this Agreement.

7.0 RELATIONSHIP

Nothing contained herein is intended to create the relationship of employer and employee between the parties hereto. Clark Consulting shall be an independent contractor and free to exercise its own judgment as to the time, place and means of performing all acts hereunder, but shall conform to all legal requirements and to all regulations of Prudential not unreasonably interfering with such freedom of action or judgment.

Clark Consulting and Prudential agree that with respect to the fulfillment of their respective duties and obligations hereunder, each will conduct themselves in accordance with the highest standards of good faith, fair dealing and commercial reasonableness.

8.0 ASSIGNMENT

No assignment by operation of law or otherwise of this Agreement or of compensation payable hereunder shall be valid unless authorized in writing by Prudential.

9.0 AMENDMENTS

9.0.1 Writing Required. No waiver or amendment of this Agreement shall be effective unless it is in writing and signed by a duly authorized officer of Prudential and Clark Consulting. The failure of Prudential or Clark Consulting to enforce any provisions of this Agreement shall not

constitute a waiver of any such provision or a course of conduct or a waiver in the future of that same provision.

9.0.2 Past Waiver. No past waiver of a provision of this Agreement by Prudential or Clark Consulting shall constitute a course of conduct or a waiver in the future of that same provision.

10.0 NOTICE

Any and all notices required to be given under this Agreement or which either of the parties may desire to give shall be in writing and shall be deemed to be delivered when sent by certified mail, postage prepaid, return receipt requested or sent by Federal Express or other recognized overnight courier service, and addressed as follows:

If to Clark Consulting:

> Becky Letsche
> Clark Consulting, Inc.
> 2121 San Jacinto Street, Suite 2200
> Dallas, TX 75201-7906

And

> Kurt Laning
> Clark Consulting, Inc.
> 102 South Wynstone Park Drive, Suite 200
> North Barrington, IL 60010

If to Prudential:

> Charles C. Morgan
> President, Nonqualified Benefit Funding
> Prudential Financial
> 290 West Mount Pleasant Avenue
> Livingston, NJ 07039

11.0 SEVERABILITY

Any provision of this Agreement which is prohibited, unenforceable or not authorized in any jurisdiction shall, as to such jurisdiction, by ineffective to the extent of such prohibition, unenforceability or, non-authorization without invalidating the remaining provisions hereof or affecting the validity, enforceability or legality of such provision in any other jurisdiction.

12.0 GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without reference to its conflicts of laws provisions.

13.0 SURVIVAL OF CERTAIN PROVISIONS

The following provisions of this Agreement shall survive the termination or cancellation of this Agreement:

(i) Article 6 - Indemnification

14.0 HEADINGS

Section headings in this Agreement are included herein for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. References to Schedules, shall, unless otherwise indicated, refer to Schedules attached to this Agreement, which shall be incorporated in and constitute a part of this Agreement.

15.0 EXECUTION IN COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

16.0 PARTIES

Whenever in this Agreement reference is made to any party, such reference shall be deemed to include the successors and assigns of such party.


THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

_____
Charles C. Morgan
Vice President


CLARK CONSULTING, INC.

_____
Thomas Pyra
Chief Operating Officer