IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY<br> OF AMERICA<br> 751 Broad Street<br> Newark, NJ 07102<br><br>                            Plaintiff,<br><br>vs.<br><br>CLARK CONSULTING, INC.<br> 102 South Wynstone Park Drive<br> North Barrington, IL 60010<br><br>                            Defendant. | Civil Action No. 07-c-6868 |

**FIRST AMENDED COMPLAINT**

**Introduction**

1.      This action arises from a commercial contract dispute between plaintiff The Prudential Insurance Company of America ("Prudential") and defendant Clark Consulting, Inc. ("Clark"). Prudential is an issuer of a variety of group life insurance contracts. Clark is a broker that sells such insurance contracts to third parties. The commercial contract at issue in this action, known as the Prepaid Marketing Meeting Expense Agreement (the "Agreement"), concerned certain marketing services that Clark was to provide Prudential in lieu of a debt owed by Clark to Prudential. Section 5.0 of the Agreement further provided that Prudential was entitled to receive a cash payment if, among other things, the parties terminated their separate broker-dealer contract. Prudential subsequently terminated the broker-dealer contract and sought payment from Clark, but Clark refused and thus is in breach of the Agreement. Prudential now seeks enforcement of its contractual right to an amount not less than $3,241,000.

2. In the alternative, Prudential is entitled to recover money from Clark under a theory of unjust enrichment because Clark has inequitably retained unearned commissions owed to Prudential.

### Jurisdiction and Parties

3. This Court has jurisdiction over this action under 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue in this Court is proper because the defendant resides in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5. Plaintiff Prudential is a life insurance company that issues and administers insurance contracts, including corporate-owned life insurance ("COLI") contracts and trust-owned life insurance ("TOLI") contracts. It is incorporated in the State of New Jersey and has its principal place of business in Newark, New Jersey.

6. Defendant Clark is a company that, among other things, acts as a broker for the sale of COLI and TOLI insurance contracts. It is incorporated in the State of Delaware and has its principal place of business in Illinois. On information and belief, Clark was recently acquired by and is now a wholly owned indirect subsidiary or affiliate of AEGON, an insurance company that competes with Prudential in, among other areas, COLI and TOLI contracts.

### Factual Background

7. On or about September 26, 2000, Prudential Investment Management Services LLC ("PIMS"), an affiliate of Prudential, and Clark Securities, Inc. ("CSI"), a subsidiary of Clark, entered into a Broker-Dealer Agreement (the "PIMS Agreement"). The PIMS Agreement

was subsequently amended and restated on January 24, 2002, and again on January 5, 2004, and was further amended on December 20, 2005. A true and correct copy of the January 5, 2004 version of the PIMS Agreement and the December 20, 2005 amendment are attached hereto as Exhibit A.

8.  The PIMS Agreement established the terms under which Clark would attempt to sell Prudential COLI and TOLI contracts to third-party purchasers. It provided, *inter alia*, that CSI would "market, solicit, procure, and submit applications for COLI/TOLI Contracts," in exchange for which PIMS would pay commissions for each COLI or TOLI contract sold to a third-party purchaser. See Exhibit A at 1, 3-6. The PIMS Agreement further provides as follows:

> "If Prudential returns, for any reason, any premiums or purchase payments on the COLI/TOLI Contract, Broker will have an immediate obligation to, and will upon demand, repay PIMS all the compensation (including Initial Sales Commission, Running Sales Commissions and Service Commissions) previously received by Broker with respect to returned premiums or purchase payments."

Id.

9.  The PIMS Agreement contains a section entitled "Termination," which provides as follows:

> "Either party may terminate this Agreement at any time by giving the other party notice thereof in writing, termination to be effective 30 days after receipt of such notice. This Agreement shall terminate automatically, effective immediately, in the event of any breach of Sections 1, 2, 3, 4, 6, or 7, or if any of the representations and warranties of Broker contained in Section 6 are not true and correct in all respects at such time that it affects or limits Broker's ability to act as a broker-dealer; but no termination shall affect the obligations of Broker pursuant to Sections 5.5.2, 5.6, 6.3, 17 or 18."

Id. at 10.

10.  After entering into the PIMS Agreement, CSI procured a third party, Allmerica, as the purchaser of two Prudential Group COLI/TOLI contracts. Prudential paid commissions to

Clark for that sale. The commission schedule for the Allmerica contracts provided, *inter alia*, that "PIMS may charge-back, and Broker shall be obligated to repay, any Unearned Supplemental Initial Sales Commissions or Unearned Heaped Running Sales Commissions" in the event of termination of or withdrawal from the COLI/TOLI contracts.

11.     On or about October 31, 2003, Allmerica tendered its COLI/TOLI contracts for surrender.

12.     As a consequence of Allmerica's surrender of its contracts, Clark was obligated to repay to Prudential an amount equal to the unearned commissions.

13.     Even with such repayment, Prudential faced a substantial loss, equal to the amount by which its unamortized commission expense exceeded the Clark repayment obligation. Accordingly, the parties agreed to seek an alternative to immediate repayment of the commissions on the Allmerica contracts.

### The Prepaid Marketing Meeting Expense Agreement

14.     As a result of discussions between Prudential and Clark concerning the Allmerica commission repayment obligation, the parties entered into a new agreement known as the Prepaid Marketing Meeting Expense Agreement (the "Agreement"), effective December 29, 2003. A true and correct copy of the Agreement is attached hereto as Exhibit B.

15.     The Agreement provided, *inter alia*, for a waiver by Prudential of the Clark obligation to pay the amount due with respect to the surrender of Allmerica Group COLI/TOLI contracts. In exchange, Clark granted to Prudential a "$3.5 million Marketing Meeting Expense Allowance." Exhibit B at § 1.0.2. Prudential was entitled to use this Allowance to offset fees for conferences hosted by Clark, including the Clark Consulting Banking Roundtable and the Clark Consulting Healthcare CEO Forum. The Agreement provided that

> "While this Agreement is in effect, Clark Consulting will waive the Conference Fees charged each year by Clark Consulting for attendance at the Conferences until such time as the Marketing Meeting Expense Allowance is exhausted. The amount waived will be the actual conference fee charged to similarly situated insurance company participants (anticipated to be $225,000 in 2004). The unused Marketing Meeting Expense Allowance will be reduced by the amount of Conference Fees waived."

Id. at § 2.0. In short, Prudential prepaid for a series of Clark marketing conferences.

16. Section 4 of the Agreement, entitled "Term and Termination," sets forth five separate reasons why either party may terminate the Agreement "for cause."

17. Section 5 of the Agreement, entitled "Compensation for Prudential's Failed Expectations," provides in pertinent part as follows:

> "5.0.1  In the event that some or all of the Conferences are discontinued without successors or in the event that it becomes otherwise impossible for Prudential to participate in some or all of the Conferences, Clark Consulting shall pay Prudential compensation as determined under Section 5.0.2 for its failed expectations.
>
> 'Impossible' shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement (which is being amended and restated contemporaneously with the execution of this Agreement) has been terminated; or (c) Prudential has withdrawn from the COLI business. Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience.
>
> 5.0.2  In the event of Prudential's failed expectations under Section 5.0.1, Clark Consulting shall pay Prudential an amount equal to the Unused Marketing Meeting Expense Allowance. The Unused Marketing Meeting Expense Allowance is defined as the Marketing Meeting Expense Allowance reduced by the cumulative amount of Conference Fees waived."

Id. at § 5.

18. From the end of 2003 until the end of 2006, Prudential attended four (4) conferences arranged by Clark. As a consequence, the Unused Marketing Meeting Expense Allowance was reduced from $3.5 million to $3,241,000.

**Termination of the Agreement**

19.     In late 2006, PIMS became aware of a pending acquisition of Clark by AEGON USA, Inc., a Prudential competitor that also placed COLI/TOLI business through Clark.  PIMS determined that such an ownership arrangement created an unacceptable conflict of interest with regard to Clark's obligations under the PIMS Agreement to market, solicit, procure, and service Prudential COLI/TOLI contracts. Accordingly, on or about December 1, 2006, PIMS exercised its right to terminate the PIMS Agreement pursuant to Section 13 of that Agreement, effective December 31, 2006.  It provided advance written notice of such termination to Clark by letter dated December 1, 2006.

20.     Upon termination of the PIMS Agreement, it became "impossible," within the express terms of Section 5.0.1 of the Prepaid Marketing Meeting Expense Agreement, for Prudential to participate in some or all conferences or to otherwise obtain the value of the consideration due and owing under that Agreement.

21.     On or about December 19, 2006, Prudential notified Clark in writing that, in light of the termination of the PIMS Agreement, Prudential was exercising its right, pursuant to Section 5.0.1 and 5.0.2 of the Prepaid Marketing Meeting Expense Agreement, to require payment by Clark of an amount equal to the Unused Marketing Meeting Expense Allowance, which was $3,241,000.  Prudential requested immediate payment of that amount.

**The Breach by Clark**

22.     Clark refused Prudential's demand for payment under Section 5.0 of the Agreement.  Rather, it sent a letter to Prudential, dated December 28, 2006, in which it denied that "it has become impossible for Prudential to participate in the conferences under the terms of the Agreement."  Clark further asserted that it "continues to promote and market Prudential's

products to potential customers" and "intend[s] to do so following the closing of the AEGON transaction."

23. Notwithstanding Clark's asserted "intent" to continue promoting and marketing Prudential products, the same December 28, 2006 letter from Clark purported to "immediately terminat[e] the Agreement for cause." None of the asserted reasons for such "for cause" termination were valid under the terms of Section 4.0 of the Agreement.

24. To date, Clark continues to refuse payment of its obligation to Prudential of $3,241,000.

## Count One:  Breach of Contract

25. Prudential realleges and incorporates by reference as if set forth in full herein the allegations of paragraphs 1 and 3 - 24, above.

26. Clark owes a contractual duty of payment to Prudential under Section 5.0 of the Agreement.

27. Clark has refused payment and thus is in breach of that Agreement.

28. As a result of Clark's breach, Prudential has suffered damages in an amount not less than $3,241,000.

WHEREFORE, Plaintiff prays that this Court:

A. Issue judgment in favor of Prudential on Count One in the amount of $3,241,000, plus interest at the judicial rate.

B. Enter such other relief as the Court finds reasonable and proper including, without limitation, reasonable costs and expenses, and attorneys' fees incurred in this proceeding.

LIBW/1667468.2

**Count Two: Unjust Enrichment**

29. In the alternative, even if there is no enforceable contractual obligation on the part of Clark to pay money damages to Prudential, Prudential is entitled to recover money from Clark under the equitable doctrine of unjust enrichment.

30. Prudential has conferred benefits on Clark in the form of unearned commissions in the amount of $2,879,960.78.

31. Clark has appreciated the benefits conferred upon it by retaining the unearned commissions paid by Prudential. In return, Clark has provided nothing of any significant value to Prudential. Clark has thereby has been unjustly enriched.

32. It is inequitable for Clark to retain the benefits conferred upon it by Prudential.

WHEREFORE, Plaintiff prays that this Court:

A. Issue judgment in favor of Prudential on Count Two in the amount of $2,879,960.78, plus interest at the judicial rate.

B. Enter such other relief as the Court finds reasonable and proper including, without limitation, reasonable costs and expenses, and attorneys' fees incurred in this proceeding.

        Respectfully submitted,

            <u>s/ Donald J. Munro</u>
            Donald J. Munro
            GOODWIN PROCTER LLP
            901 New York Avenue, NW
            Washington, D.C. 20001
            Telephone 202-346-4137
            Facsimile 202-346-4444

            <u>s/Daniel J. Mohan</u>
            Daniel J. Mohan
            DALEY MOHAN GROBLE, P.C.
            55 West Monroe Street
            Suite 1600
            Chicago, IL 60603
            Telephone 312-422-9999


        ATTORNEYS FOR THE PRUDENTIAL
        INSURANCE COMPANY OF AMERICA

LIBW/1667468.2

## CERTIFICATE OF SERVICE

I, Daniel J. Mohan, an attorney, hereby certifies that he caused the foregoing **FIRST AMENDED COMPLAINT** to be served on the attorney of record electronically by operation of the Court's electronic filing system, by filing the document electronically with the Clerk of this Court this 16th day of January, 2008, addressed to:

Gregory R. James, Jr.
Laner, Muchin, Dombrow,
Becker, Levin and Tominberg, Ltd.
515 N. State Street
Suite 2800
Chicago, IL  60610

Thomas S. Bradley
Laner, Muchin, Dombrow,
Becker, Levin and Tominberg, Ltd.
515 N. State Street
Suite 2800
Chicago, IL  60610

        s/ Daniel J. Mohan
        Daniel J. Mohan

LIBW/1667468.2