**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No.  07 C 6868 |
| v. | ) Judge Ruben Castillo |
| | ) Magistrate Judge Denlow |
| CLARK CONSULTING, INC., | ) ) |
| Defendant. | ) |

**ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
AND COUNTERCLAIM OF CLARK CONSULTING, INC.**

Clark Consulting, Inc. ("Defendant"), by its attorneys, hereby sets forth its Answer to

Plaintiff's First Amended Complaint and its Counterclaim against Plaintiff.

**INTRODUCTION**

**PARAGRAPH 1:**

This action arises from a commercial contract dispute between plaintiff The Prudential Insurance Company of America ("Prudential") and defendant Clark Consulting, Inc ("Clark"). Prudential is an issuer of a variety of group life insurance contracts. Clark is a broker that sells such insurance contracts to third parties. The commercial contract at issue in this action, known as the Prepaid Marketing Meeting Expense Agreement (the "Agreement"), concerned certain marketing services that Clark was to provide Prudential in lieu of a debt owed by Clark to Prudential. Section 5.0 of the Agreement further provided that Prudential was entitled to receive a cash payment if, among other things, the parties terminated their separate broker-dealer contract. Prudential subsequently terminated the broker-dealer contract and sought payment from Clark, but Clark refused and thus is in breach of the Agreement.  Prudential now seeks enforcement of its contractual right to an amount not less than $3,241,000.

**ANSWER:**

Defendant admits that this action arises from a commercial contract dispute between

plaintiff, the Prudential Insurance Company of America ("Prudential") and defendant Clark

Consulting, Inc. ("Defendant" or "Clark").  Defendant admits that Prudential is an issuer of a

variety of group life insurance contracts and that Clark is a broker that sells such insurance

contracts to third parties.  Defendant admits that one of the contracts at issue is the Prepaid Marketing Meeting Expense Agreement (the "Marketing Agreement") and that the Marketing Agreement concerned certain marketing opportunities and access to both Clark clients and selling agents that Clark was to provide Prudential in exchange for Prudential's irrevocable waiver of Clark's approximately $2.9 million obligation to Prudential on behalf of Clark and certain of Clark's selling agents.  Clark denies that Section 5.0 of the Agreement "provided that Prudential was entitled to receive a cash payment if, among other things, the parties terminated their separate broker-dealer contract."  Defendant admits that Prudential indicated its intent to terminate the broker-dealer agreement and sought payment from Clark under the terms of the Marketing Agreement, but denies that Prudential had the right to take such action under the contract terms and denies that Prudential is entitled to payment from Clark.  Defendant denies that Clark is in breach of the Marketing Agreement.  Defendant denies that Prudential has a contractual right to receive $ 3,241,000.00 from Clark.

**PARAGRAPH 2:**

In the alternative, Prudential is entitled to recover money from Clark under a theory of unjust enrichment because Clark has inequitably retained unearned commissions owed to Prudential.

**ANSWER:**

Defendant denies that Prudential is entitled to recover money from Clark under a theory of unjust enrichment and denies that Clark has inequitably retained unearned commissions owed to Prudential.  Defendant further states that Prudential's claim for recovery under a theory of unjust enrichment fails to state a claim upon which relief can be granted.

## JURISDICTION AND PARTIES

**PARAGRAPH 3:**

This Court has jurisdiction over this action under 28 U.S.C §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:**

Defendant admits the jurisdictional allegations contained in paragraph 3 of Plaintiff's

Amended Complaint.

**PARAGRAPH 4:**

Venue in this Court is proper because the defendant resides in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**ANSWER:**

Defendant admits that it has operations in this district, but denies that it has its principal

place of business in this district.  Defendant admits that a substantial part of the events or

omissions giving rise to the claim occurred in this judicial district.

**PARAGRAPH 5:**

Plaintiff Prudential is a life insurance company that issues and administers insurance contracts, including corporate-owned life insurance ("COLI") contracts and trust-owned life insurance ("TOLI") contracts.  It is incorporated in the State of New Jersey and has its principal place of business in Newark, New Jersey.

**ANSWER:**

Defendant admits that Prudential is a life insurance company that issues and administers

insurance contracts, including corporate-owned life insurance ("COLI") contracts and trust-

owned life insurance ("TOLI") contracts.  Defendant is without sufficient knowledge or

information to form a belief as to the remaining allegation in paragraph 5 of Plaintiff's Amended

Complaint, that Prudential is incorporated in the State of New Jersey and has a principal place of

business in Newark, New Jersey, and therefore must deny these allegations.

**PARAGRAPH 6:**

Defendant Clark is a company that, among other things, acts as a broker for the sale of COLI and TOLI insurance contracts. It is incorporated in the State of Delaware and has its principal place of business in Illinois. On information and belief, Clark was recently acquired by and is now a wholly owned indirect subsidiary or affiliate of AEGON, an insurance company that competes with Prudential in, among other areas, COLI and TOLI contracts.

**ANSWER:**

Defendant admits that Clark is a company that, among other things, acts as a broker for

the sale of COLI and TOLI insurance contracts.  Defendant further admits that it is incorporated

in the State of Delaware.  Clark denies that it has its principal place of business in Illinois.

Defendant further admits that Clark was recently acquired by and is now a wholly owned

indirect subsidiary of AEGON USA, Inc. ("AEGON"), an insurance company.  Defendant is

without sufficient knowledge or information to form a belief as to the remaining allegation in

paragraph 6 of Plaintiff's Amended Complaint, that AEGON competes with Prudential in,

among other areas, COLI and TOLI contracts and, therefore, must deny same.

## FACTUAL BACKGROUND

**PARAGRAPH 7:**

On or about September 26, 2000, Prudential Investment Management Services LLC ("PIMS"), an affiliate of Prudential, and Clark Securities, Inc ("CSI"), a subsidiary of Clark, entered into a Broker-Dealer Agreement (the "PIMS Agreement").   The PIMS Agreement was subsequently amended and restated on January 24, 2002, and again on January 5, 2004, and was further amended on December 20, 2005. A true and correct copy of the January 5, 2004 version of the PIMS Agreement and the December 20, 2005 amendment are attached hereto as Exhibit A.

**ANSWER:**

Defendant admits that on or about September 26, 2000, Prudential Investment

Management Services, LLC ("PIMS"), an affiliate of Prudential, and Clark/Bardes Securities,

Inc. (now Clark Securities, Inc ("CSI")), a subsidiary of Clark, entered into a Broker-Dealer

Agreement (the "PIMS Agreement"), and that the PIMS Agreement was subsequently amended

and restated on January 24, 2002, and on January 5, 2004, and thereafter amended effective December 20, 2005.  Defendant admits that true and correct copies of the January 5, 2004 version of the PIMS Agreement and the December 20, 2005 amendment thereto are attached to Plaintiff's Amended Complaint.

**PARAGRAPH 8:**

The PIMS Agreement established the terms under which Clark would attempt to sell Prudential COLI and TOLI contracts to third-party purchasers. It provided, *inter alia*, that CSI would "market, solicit, procure, and submit applications for COLI/TOLI Contracts," in exchange for which PIMS would pay commissions for each COLI or TOLI contract sold to a third-party purchaser.  See Exhibit A at 1, 3-6.  The PIMS Agreement further provides as follows:

> "If Prudential returns, for any reason, any premiums or purchase payments on the COLI/TOLI Contract, Broker will have an immediate obligation to, and will upon demand, repay PIMS all the compensation (including Initial Sales Commission, Running Sales Commissions and Service Commissions) previously received by Broker with respect to returned premiums or purchase payments."

Id.

**ANSWER:**

Defendant admits that the PIMS Agreement established the terms under which Clark would attempt to sell Prudential COLI and TOLI contracts to third-party purchasers and further admits that such agreement contains the language contained in paragraph 8 of Plaintiff's Amended Complaint.

**PARAGRAPH 9:**

The PIMS Agreement contains a section entitled "Termination," which provides as follows:

> "Either party may terminate this Agreement at any time by giving the other party notice thereof in writing, termination to be effective 30 days after receipt of such notice. This Agreement shall terminate automatically, effective immediately, in the event of any breach of Sections 1, 2, 3, 4, 6, or 7, or if any of the representations and warranties of Broker contained in Section 6 are not true and correct in all respects at such time that it affects or limits Broker's ability to act as a broker-dealer; but no termination shall

affect the obligations of Broker pursuant to Sections 5.5.2, 5.6, 6.3, 17 or 18."

Id. at 10.

**ANSWER:**

Defendant admits that the PIMS Agreement contains the language identified in paragraph 9 of Plaintiff's Amended Complaint.

**PARAGRAPH 10:**

After entering into the PIMS Agreement, CSI procured a third party, Allmerica, as the purchaser of two Prudential Group COLI/TOLI contracts. Prudential paid commissions to Clark for that sale. The commission schedule for the Allmerica contracts provided, inter alia, that "PIMS may charge-back, and Broker shall be obligated to repay, any Unearned Supplemental Initial Sales Commissions or Unearned Heaped Running Sales Commissions" in the event of termination of or withdrawal from the COLI/TOLI contracts.

**ANSWER:**

Defendant admits that, after entering into the PIMS Agreement, Clark and its selling agents procured a third-party, Allmerica, as the purchaser of  Prudential Group COLI/TOLI contracts and that Prudential paid commissions to Clark on behalf of Clark and its selling agents for that sale.  Defendant further admits that the commission schedule applicable to the Allmerica contracts generally provided that in the event of termination of or withdrawal from the COLI/TOLI contracts PIMS may charge-back to CSI, and CSI shall be obligated to repay, any unearned commissions on behalf of Clark and certain of its selling agents.

**PARAGRAPH 11:**

On or about October 31, 2003, Allmerica tendered its COLI/TOLI contracts for surrender.

**ANSWER:**

Defendant admits that on or about October 31, 2003, Allmerica tendered its COLI/TOLI contracts for surrender.

**PARAGRAPH 12:**

As a consequence of Allmerica's surrender of its contracts, Clark was obligated to repay to Prudential an amount equal to the unearned commissions.

**ANSWER:**

Defendant admits that, as a consequence of Allmerica's surrender of its contracts, Clark was obligated, at that time and under then existing contractual agreements, to repay to Prudential on behalf of Clark and Clark's selling agents an amount equal to certain unearned commissions paid to Clark on behalf of Clark and Clark's selling agents.

**PARAGRAPH 13:**

Even with such repayment, Prudential faced a substantial loss, equal to the amount by which its unamortized commission expense exceeded the Clark repayment obligation. Accordingly, the parties agreed to seek an alternative to immediate repayment of the commissions on the Allmerica contracts.

**ANSWER:**

Defendant is without sufficient knowledge or information to form a belief as to the allegation in paragraph 13 of Plaintiff's Amended Complaint, that, even with such repayment, Prudential faced a substantial loss, equal to the amount by which its unamortized commission expense exceeded the Clark repayment obligation, and, therefore must deny same. Defendant admits that the parties agreed to seek an alternative to immediate repayment of the unearned commissions on the Allmerica contracts.

**THE PREPAID MARKETING MEETING EXPENSE AGREEMENT**

**PARAGRAPH 14:**

As a result of discussions between Prudential and Clark concerning the Allamerica commission repayment obligation, the parties entered into a new agreement known as the Prepaid Marketing Meeting Expense Agreement (the "Agreement"), effective December 29, 2003. A true and correct copy of the Agreement is attached hereto as Exhibit B.

**ANSWER:**

Defendant admits that, as a result of discussions between Prudential and Clark concerning the Allmerica commission repayment obligation, the parties entered into a new agreement known as the Prepaid Marketing Meeting Expense Agreement (the "Marketing Agreement"), effective December 29, 2003. Defendant admits that Exhibit B to Plaintiff's Complaint is a true and correct copy of the initial agreement, but denies that Exhibit B is the version of the Marketing Agreement in effect at the time of Prudential's attempt to terminate the agreement. A true and correct copy of the amended and restated version of the Marketing Agreement entered into on December 29, 2004 is attached hereto as Exhibit "A."

**PARAGRAPH 15:**

The Agreement provided, *inter alia*, for a waiver by Prudential of the Clark obligation to pay the amount due with respect to the surrender of Allmerica Group COLI/TOLI contracts. In exchange, Clark granted to Prudential a "$3.5 million Marketing Meeting Expense Allowance." Exhibit B at § 1.0.2. Prudential was entitled to use this Allowance to offset fees for conferences hosted by Clark, including the Clark Consulting Banking Roundtable and the Clark Consulting Healthcare CEO Forum. The Agreement provided that:

> "While this Agreement is in effect, Clark Consulting will waive the Conference Fees charged each year by Clark Consulting for attendance at the Conferences until such time as the Marketing Meeting Expense Allowance is exhausted. The amount waived will be the actual conference fee charged to similarly situated insurance company participants (anticipated to be $225,000 in 2004). The unused Marketing Meeting Expense Allowance will be reduced by the amount of Conference Fees waived. "

Id. at §2.0. In short, Prudential prepaid for a series of Clark marketing conferences.

**ANSWER:**

Defendant admits that the initial Marketing Agreement and the amended version both provide that, upon entering into the Marketing Agreement, Prudential irrevocably waived Clark's and Clark's selling agents' obligations to pay the amount due with respect to the surrender of Allmerica Group COLI/TOLI contracts, and that, in exchange, Clark gave Prudential a $ 3.5

million Marketing Meeting Expense Allowance.  Defendant further states that creation of the

Marketing Agreement and the Marketing Meeting Expense Allowance granted Prudential

valuable access to both Clark's selling agents and clients, which level of access was previously

unavailable to Prudential. Defendant further admits that Prudential was entitled to use the

Allowance to offset fees for conferences hosted by Clark, including the Clark Consulting

Banking Roundtable and the Clark Consulting Healthcare CEO Forum. Defendant further admits

that the Marketing Agreement contained the language cited in paragraph 15 of Plaintiff's

Amended Complaint.  Defendant further admits that, under the terms of the Marketing

Agreement, Prudential, in effect, prepaid for and agreed to use its increased access to both

Clark's selling agents and clients and to attend a series of Clark marketing conferences in lieu of

receiving reimbursement from Clark on behalf of Clark and its selling agents of the unearned

Allmerica commissions.

## PARAGRAPH 16:

Section 4 of the Agreement, entitled "Term and Termination," sets forth five separate
reasons why either party may terminate the Agreement "for cause."

## ANSWER:

Defendant admits that Section 4 of the Marketing Agreement is entitled "Term and

Termination" and Section 4.0.2 sets forth five separate circumstances under which Prudential

may terminate the contract "for cause" and Section 4.0.3 sets forth five separate different

circumstances under which Clark may terminate the contract "for cause."

## PARAGRAPH 17:

Section 5 of the Agreement, entitled "Compensation for Prudential's Failed
Expectations," provides in pertinent part as follows:

> "5.0.1 In the event that some or all of the Conferences are discontinued
> without successors or in the event that it becomes otherwise impossible for
> Prudential to participate in some or all of the Conferences, Clark

Consulting shall pay Prudential compensation as determined under Section 5.0.2 for its failed expectations.

'Impossible' shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement (which is being amended and restated contemporaneously with the execution of this Agreement) has been terminated; or (c) Prudential has withdrawn from the COLI business. Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience.

5.0.2 In the event of Prudential's failed expectations under Section 5.0.1, Clark Consulting shall pay Prudential an amount equal to the Unused Marketing Meeting Expense Allowance. The Unused Marketing Meeting Expense Allowance is defined as the Marketing Meeting Expense Allowance reduced by the cumulative amount of Conference Fees waived."

Id. at §5.

**ANSWER:**

Defendant admits that the version of the Marketing Agreement attached as Exhibit A to Plaintiff's Complaint contains paragraphs 5.0.1 and 5.0.2 and that such paragraphs contain the language set forth in paragraph 17 of Plaintiff's Amended Complaint. Defendant denies that paragraph 17 of Plaintiff's Amended Complaint contains all of the contract language set forth in Article 5 of the current version of the Marketing Agreement.

**PARAGRAPH 18:**

From the end of 2003 until the end of 2006, Prudential attended four (4) conferences arranged by Clark. As a consequence, the Unused Marketing Meeting Expense Allowance was reduced from $3.5 million to $3,241,000.

**ANSWER:**

Defendant denies that from the end of 2003 until the end of 2006, Prudential attended four conferences arranged by Clark. Clark's records indicate that Prudential attended five (5) such conferences. Defendant further denies that, as a consequence, the Unused Marketing Meeting Expense Allowance "was reduced from $ 3.5 million to $3,241,000."

## TERMINATION OF AGREEMENT

### PARAGRAPH 19:

In late 2006, PMS became aware of a pending acquisition of Clark by AEGON USA, Inc., a Prudential competitor that also placed COLI/TOLI business through Clark.   PIMS determined that such an ownership arrangement created an unacceptable conflict of interest with regard to Clark's obligations under the PMS Agreement to market, solicit, procure, and service Prudential COLI/TOLI contracts.   Accordingly, on or about December 1, 2006, PIMS exercised its right to terminate the PIMS Agreement pursuant to Section 13 of that Agreement, effective December 31, 2006.   It provided advance written notice of such termination to Clark by letter dated December 1, 2006.

### ANSWER:

Defendant is without sufficient knowledge or information to form a belief as to the allegation in paragraph 19 of Plaintiff's Amended Complaint that, in late 2006, Prudential became aware of a pending acquisition of Clark by AEGON USA, INC.  Defendant is without sufficient knowledge or information to form a belief as to the remaining allegation in paragraph 19 of Plaintiff's Amended Complaint, that AEGON is a Prudential competitor that also places COLI/TOLI business through Clark, and, therefore must deny same.  Defendant is without knowledge or information sufficient to form a belief at to whether PIMS concluded or "determined that such ownership arrangement created an unacceptable conflict of interest with regard to Clark's obligations under the PIMS Agreement to market, solicit, procure, and service Prudential COLI/TOLI contracts" and, therefore, must deny same.  Defendant denies that such proposed ownership arrangement created any conflict of interest with regard to Clark's obligations under the PIMS Agreement.  Defendant admits that PIMS sent a letter to Clark on or about December 1, 2006, purporting to terminate the PIMS Agreement effective December 31, 2006.  Defendant denies, however, that PIMS had the right to terminate the PIMS Agreement for the sole purpose of creating for Prudential a self-induced "impossibility" under the Marketing Agreement.

**PARAGRAPH 20:**

Upon termination of the PIMS Agreement, it became "impossible," within the express terms of Section 5.0.1 of the Prepaid Marketing Meeting Expense Agreement, for Prudential to participate in some or all conferences or to otherwise obtain the value of the consideration due and owing under that Agreement.

**ANSWER:**

Defendant denies the allegation in paragraph 20 of Plaintiff's Amended Complaint that, "upon termination of the PIMS Agreement it became impossible within the express terms of Section 5.0.1 of the Prepaid Marketing Meeting Expense Agreement for Prudential to participate in some or all of the conferences or to otherwise obtain the value of the consideration due and owing under that Agreement." Defendant further denies that PIMS' unilateral termination of the PIMS Agreement was valid and effective and further denies that such termination permitted Prudential to, in turn, escape its agreed upon obligations under the Marketing Agreement.

**PARAGRAPH 21:**

On or about December 19, 2006, Prudential notified Clark in writing that, in light of the termination of the PMS Agreement, Prudential was exercising its right, pursuant to Section 5.0.1 and 5.0.2 of the Prepaid Marketing Meeting Expense Agreement, to require payment by Clark of an amount equal to the Unused Marketing Meeting Expense Allowance, which was $3,241,000. Prudential requested immediate payment of that amount.

**ANSWER:**

Defendant admits that, on or about December 19, 2006, Prudential notified Clark in writing that it was terminating the Marketing Agreement in light of the termination of the PIMS Agreement and that it contended that it was entitled to a payment from Clark in an amount equal to the Unused Marketing Meeting Expense Allowance which it contended was $ 3,241,000. Defendant denies that Prudential had a contractual right to terminate the Marketing Agreement, denies that its owes any payment to Prudential at this time, and denies that if it did owe any payment to Prudential under the Marketing Agreement that such amount would be $ 3,241,000.

## THE BREACH BY CLARK

**PARAGRAPH 22:**

Clark refused Prudential's demand for payment under Section 5.0 of the Agreement. Rather, it sent a letter to Prudential, dated December 28, 2006, in which it denied that "it has become impossible for Prudential to participate in the conferences under the terms of the Agreement." Clark further asserted that it "continues to promote and market Prudential's products to potential customers" and "intend[s] to do so following the closing of the AEGON transaction."

**ANSWER:**

Defendant admits that it denied Prudential's demand for payment under Section 5.0 of the Agreement.  Defendant admits that it sent a letter to Prudential dated December 28, 2006, in which it denied that "it has become impossible for Prudential to participate in the conferences under the terms of the Agreement."  Defendant further admits that, in the same letter, it asserted that it "continues to promote and market Prudential's products to potential customers" and "intend[s] to do so following the closing of the AEGON transaction."

**PARAGRAPH 23:**

Notwithstanding Clark's asserted "intent" to continue promoting and marketing Prudential products, the same December 28, 2006 letter from Clark purported to "immediately terminat[e] the Agreement for cause." None of the asserted reasons for such "for cause" termination were valid under the terms of Section 4.0 of the Agreement.

**ANSWER:**

Defendant admits that the same letter from Clark terminated the Marketing Agreement for cause.  Defendant denies that the asserted reasons for such cause were not valid under the terms of Section 4.0 of the Marketing Agreement.

**PARAGRAPH 24:**

To date, Clark continues to refuse payment of its obligation to Prudential of $3,241,000.

**ANSWER:**

Defendant admits the allegation contained in paragraph 24 of Plaintiff's Amended Complaint that, to date, Clark continues to refuse to pay Prudential $ 3,241,000.  Defendant denies that it is obligated to Prudential in this amount.

## COUNT ONE -- BREACH OF CONTRACT

**PARAGRAPH 25:**

Prudential realleges and incorporates by reference as if set forth in full herein the allegations of paragraphs 1 and 3 - 24, above.

**ANSWER:**

Defendant's admissions and denials relative to paragraph 25 of Plaintiff's Amended Complaint are set forth above.

**PARAGRAPH 26:**

Clark owes a contractual duty of payment to Prudential under Section 5.0 of the Agreement.

**ANSWER:**

Defendant denies that it owes a contractual duty of payment to Prudential under Section 5.0 of the Agreement.

**PARAGRAPH 27:**

Clark has refused payment and thus is in breach of that Agreement.

**ANSWER:**

Defendant admits that it has refused to make payment to Prudential but denies that, in so doing, it has breached the Marketing Agreement.

**PARAGRAPH 28:**

As a result of Clark's breach, Prudential has suffered damages in an amount not less than $3,241,000.

**ANSWER:**

Defendant denies that it breached the Agreement and denies that Prudential has suffered damages in the amount of $ 3,241,000.

## COUNT TWO -- UNJUST ENRICHMENT

Defendant makes no answer to Count II because Defendant has filed a Motion to Dismiss that Count pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CLARK'S COUNTERCLAIM FOR DAMAGES AGAINST PRUDENTIAL INSURANCE COMPANY OF AMERICA

## INTRODUCTION

1.     Section 4.03(v) of the Marketing Agreement provides that Clark may immediately terminate the Marketing Agreement for cause upon Prudential's failure to respond promptly to requests for illustrations and product support.  "Failure to respond promptly" means failure to respond by the mutually agreeable deadline for a response negotiated by Prudential and Clark and documented in writing at the time of the request for illustrations and/or product support.

2.     Subsequent to the effective date of the Marketing Agreement, Prudential entered into a preferential marketing arrangement with Jerry Reen, a significant competitor of Clark.

3.     As a result of its actions in support of this arrangement, Prudential failed to respond promptly to requests for illustrations and product support.  Specifically, during the term of the Marketing Agreement, individuals at Clark requested BOLI illustrations from Prudential for a number of banks, and Prudential communicated to Clark its intent to deliver such illustrations.  Due to its preferential marketing arrangement with Mr. Reen, however, Prudential later refused to deliver the agreed upon illustrations for a number of banks, which include, but are not limited to, New Alliance/Bank West Nevada, Sovereign Bank, and Webster Bank.

4.      For other banks, Prudential purposefully provided non-competitive illustrations to Clark, in order to put Mr. Reen at a competitive advantage in the marketplace.  Such banks include, but are not limited to, California National Bank, Bank of Hawaii, and Central Pacific Bank.

5.      Finally, for certain banks, Prudential refused to provide Clark with any quote at all due to Prudential's arrangement with Mr. Reen.  Such banks include, but are not limited to, Dimes Savings Bank, First Midwest, Sterling Bank, Stillwater National and OMNI.

6.      Due to Prudential's preferential arrangement with Mr. Reen, Prudential has repeatedly failed to respond promptly, if at all, to Clark's requests for illustrations and product support.

7.      Under Section 4.0.3(iii), Clark may immediately terminate the Agreement for cause upon any material violation by Prudential or its officers, employees or agents of any rule or regulation of any regulatory authority having jurisdiction which would materially adversely affect Prudential's ability to satisfy its obligations under the Agreement.

8.      On December 12, 2006, Prudential announced that it reached separate settlements with the New York Attorney General and the California Department of Insurance in connection with investigations into regulatory violations regarding Prudential's payment of contingent commissions to its producers. Prudential agreed to pay $2.5 million to the State of New York and $16.5 million to a compensation fund for affected group insurance policyholders. Prudential also agreed to change its business practices and discontinue paying contingent commissions.

9.      In addition, on August 28, 2006, Prudential Financial, Inc. announced that it agreed to pay $600 million to settle civil and criminal allegations by the Department of Justice,

the Securities and Exchange Commission and several other regulators that former workers at its brokerage unit defrauded mutual fund investors by helping clients rapidly trade funds.

10.     The large fines and the accompanying negative publicity from the settlements referenced above have tarnished Prudential's reputation in the marketplace which materially adversely affects Prudential's ability to satisfy its obligations under the Agreement.

11.     Pursuant to Section 4.0.3(iv), Clark may immediately terminate the Agreement for cause upon Prudential's failure to perform or observe any material term, covenant or agreement contained in this Agreement and any such failure shall remain unremedied for 30 days after the receipt from Clark of written notice thereof.

12.     Prudential has breached Section 4.0.3(iv) of the Agreement for at least three reasons. First, the Agreement required that Prudential work with Clark to implement two products on Clark's CBIS illustration system ("CBIS") at a credit of $150,000 each to the Marketing Meeting Expense Allowance.  Prudential's failure to work with Clark to place Prudential's products on CBIS violated a material term of the Agreement and significantly impaired Clark's ability to market and sell Prudential products.

13.     Second, Prudential's failure to attend certain conferences to which it was invited by Clark violated the intent of the Agreement to reduce the unused Marketing Meeting Expense Allowance through such attendance and promote Prudential products to Clark prospects who attended such meetings.

14.     Third, during the term of the Marketing Agreement, Prudential caused Clark to lose revenue through its involvement in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies. These exchanges by Prudential violated the spirit of the Marketing Agreement.

15.     The Marketing Agreement specifically provides that, in entering into the agreement, Prudential irrevocably waived the Clark Consulting obligation to pay the $ 2.9 million that was previously due and payable to Prudential with respect to the surrender of the Allmerica Group COLI/TOLI contracts.  See Ex. "A" at Section  1.0.1

16.     The Marketing Agreement further specifically provides that, in consideration for that waiver, Clark granted to Prudential a $ 3.5 million Marketing Meeting Expense Allowance to be used solely towards sponsorship of the Conferences identified in the contract, and that, except as otherwise provided in Article 5.0 of the Marketing Agreement, the Marketing Meeting Expense Allowance has no immediately redeemable value and could only be used as credit toward future conference fees.  See Ex. "A" at Section 1.0.2

17.     Article 5.0 of the Marketing Agreement defines the limited circumstances under which Prudential has the right to opt out of the Marketing Agreement and receive some monetary reimbursement from Clark as opposed to continuing under the terms of the contract to attend the conferences as its only means of recouping the Allmerica commissions.  One of these limited and defined circumstances is "in the event that it otherwise becomes 'impossible' for Prudential to participate in some or all of the Conferences."  Ex. "A" at Section 5.0.1.

18.     "Impossible is defined in the contract as follows: "'Impossible' shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement…has been terminated; or (c) Prudential has withdrawn from the COLI business.  The contract further expressly states that "Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience."  Id.

19.     It has not become "impossible" for Prudential to participate in some or all of the Conferences.  The contract does not permit Prudential to create an "impossibility" by instigating

the unilateral termination of the PIMS Agreement, as was done here, as such conduct was "for its own convenience" and thus constituted a breach of the terms of the Marketing Agreement.

20.     The Marketing Agreement specifies in detail the differing monetary recompense to which Prudential will be entitled from Clark if (1) "impossibility" occurs or (2) if Prudential terminates for cause.  The Marketing Agreement does not provide for any recompense for Prudential in the event that Clark terminates the contract for cause.

21.     By letter dated December 28, 2006, pursuant to Section 4.0.3 of the Agreement, Clark terminated the Marketing Agreement for cause and, under the terms of the Marketing Agreement, Clark now has no further obligations remaining to Prudential, including, but not limited to, payment of any portion of the Unused Marketing Meeting Expense Allowance pursuant to Section 5.0.2 or Section 5.0.3 of the Agreement.

<u>**COUNT ONE -- BREACH OF CONTRACT**</u>

22.     Clark realleges and incorporates by reference as if set forth in full herein the allegations of paragraphs 1-21, above.

23.     Prudential breached the terms of the Marketing Agreement by failing to respond promptly, if at all, to requests for illustrations and product support, materially violating rules and regulations which materially adversely affected Prudential's ability to satisfy its obligations under the Marketing Agreement, failing to perform or observe material terms, covenants, or agreements contained within the Marketing Agreement, and attempting to terminate the contract for its own convenience.

24.     Additionally, Prudential breached the covenant of good faith and fair dealing implied in every Illinois contract by instigating the unilateral termination of the PIMS Agreement in an effort to create its own "impossibility" and avoid its obligations under the Marketing Agreement for its own convenience.

25.     Prudential's interpretation of Article 5.0 of the Marketing Agreement so as to permit its conduct renders the contract illusory and nullifies, rather than supports, the contract as written.

26.     Prudential breached the written terms of the Marketing Agreement and its express obligations to Clark under the Marketing Agreement.

27.     Prudential breached the implied duty of good faith and fair dealing by its conduct in instigating the unilateral termination of the PIMS Agreement as a means of escaping its obligations under the Marketing Agreement.

28.     As a result of such breaches, and the refusal of Prudential to participate further in the Marketing Conferences, Clark had the right to terminate the Marketing Agreement for cause, and owes no further obligation to Prudential under the terms of the Marketing Agreement.

29.     As a result of Prudential's breach of the Marketing Agreement, Clark has suffered damages in an amount in excess of $9,000,000.00 and, in all likelihood, in an amount far in excess of $10,000,000.00.

WHEREFORE, Defendant prays that this Court issue Judgment in favor of Clark in the amount of its total financial damages resulting from Prudential's breach of the Marketing Agreement, that Plaintiff take nothing by reason of this action, that the Plaintiff's unjust enrichment count be dismissed, and further, that Defendant be allowed to recover all other relief that the Court finds reasonable and proper, including, without limitation, reasonable costs and expenses, and attorney's fees incurred in this proceeding.

## **JURY DEMAND**

Clark consulting hereby requests a jury for all of Prudential's claims against Clark which are triable to a jury and a jury on Clark's claims against Prudential.

WHEREFORE, having fully answered or moved to dismiss the allegations in Plaintiff's Amended Complaint, Defendant Clark Consulting, Inc., prays that Plaintiff take nothing by reason of its Complaint, and that Defendant be awarded its costs of court, including reasonable attorneys' fees, and for such other and further relief as this Court deems appropriate.

Dated:  January 28, 2008                     CLARK CONSULTING, INC.

By:   /s/ Gregory R. James, Jr.
          Gregory R. James, Jr.

Gregory R. James, Jr. (06198667)
Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610
(312) 467-9800, (312) 467-9479 (fax)
gjames@lanermuchin.com

Tara Hanley
Dale G. Markland
Markland Hanley LLP
2200 Ross Avenue, Suite 4100W
Dallas, Texas 75201
469.341.3633 (main), 469.341.3640 (fax)
thanley@marklandhanley.com
dmarkland@marklandhanley.com

## CERTIFICATE OF SERVICE

      Gregory R. James, Jr., an attorney, hereby certifies that he caused the Defendant's Answer to Plaintiff's Amended Complaint and Counterclaim of Clark Consulting, Inc. in the above-captioned matter to be served on the parties of record listed below, via Electronic Filing to Lisa Kane, through the U.S. District Court, Northern District of Illinois on this 28th day of January 2008, addressed to:

**Donald J. Munro**
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4137
Email: dmunro@goodwinprocter.com

**Raymond Hugo Groble, III**
Daley Mohan Groble P.C.
55 W. Monroe
Suite 1600
Chicago, IL 60603
(312) 422-9999
Fax: (312) 201-9368
Email: groble@daleymohan.com

**Daniel J. Mohan**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312) 422-9999
Fax: 312-201-9368
Email: mohan@daleymohan.com

**Sean M. Sullivan**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312) 422-9999
Fax: (312) 422-5370
Email: ssullivan@daleymohan.com

**Joel B. Cornfeld**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312) 422-0784
Fax: (312)201-9368
Email: jcornfeld@daleymohan.com

**William Joseph McFadden**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312) 422-6522
Fax: (312) 201-9368
Email: wmcfadden@daleymohan.com

/s/ Gregory R. James, Jr.
Gregory R. James, Jr.