IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY ) OF AMERICA, ) | |
| Plaintiff, ) ) ) v. ) ) CLARK CONSULTING, INC., ) ) Defendant. ) | Case No. 07 C 6868 Judge Ruben Castillo Magistrate Judge Denlow |

**FIRST AMENDED COUNTERCLAIM OF CLARK CONSULTING, INC. FOR DAMAGES AGAINST PRUDENTIAL INSURANCE COMPANY OF AMERICA**

Clark Consulting, Inc. ("Defendant" or "Clark"), by its attorneys, hereby sets forth its First Amended Counterclaim against Plaintiff, The Prudential Insurance Company of America ("Prudential").

**INTRODUCTION**

1. Section 4.03(v) of the Amended and Restated Prepaid Marketing Meeting Expense Agreement ("Marketing Agreement") provides that Clark may immediately terminate the Marketing Agreement for cause upon Prudential's failure to respond promptly to requests for illustrations and product support. "Failure to respond promptly" means failure to respond by the mutually agreeable deadline for a response negotiated by Prudential and Clark and documented in writing at the time of the request for illustrations and/or product support.

2. Subsequent to the effective date of the Marketing Agreement, Prudential entered into a preferential marketing arrangement with Jerry Reen, a significant competitor of Clark.

3. As a result of its actions in support of this arrangement, Prudential failed to respond promptly to requests for illustrations and product support. Specifically, during the term of the Marketing Agreement, individuals at Clark requested BOLI illustrations from Prudential for a number of banks, and

1

Prudential communicated to Clark its intent to deliver such illustrations. Due to its preferential marketing arrangement with Mr. Reen, however, Prudential later refused to deliver or provide all necessary illustrations for a number of banks, which include, but are not limited to, New Alliance, Western Alliance/Bank West Nevada, Sovereign Bank, Dime Savings Bank, and Webster Bank.

4. For other banks, Prudential purposefully provided non-competitive illustrations to Clark, in order to put Mr. Reen at a competitive advantage in the marketplace. Such banks include, but are not limited to, California National Bank, Bank of Hawaii, and Central Pacific Bank.

5. Finally, for certain banks, Prudential refused to provide Clark with any quote at all due to Prudential's arrangement with Mr. Reen. Such banks include, but are not limited to, First Midwest, Sterling Bank, Stillwater National and OMNI.

6. Due to Prudential's preferential arrangement with Mr. Reen, Prudential has repeatedly failed to respond promptly, if at all, to Clark's requests for illustrations and product support.

7. Under Section 4.0.3(iii), Clark may immediately terminate the Marketing Agreement for cause upon any material violation by Prudential or its officers, employees or agents of any rule or regulation of any regulatory authority having jurisdiction which would materially adversely affect Prudential's ability to satisfy its obligations under the Marketing Agreement.

8. On December 12, 2006, Prudential announced that it reached separate settlements with the New York Attorney General and the California Department of Insurance in connection with investigations into regulatory violations regarding Prudential's payment of contingent commissions to its producers. Prudential agreed to pay $2.5 million to the State of New York and $16.5 million to a compensation fund for affected group insurance policyholders. Prudential also agreed to change its business practices and discontinue paying contingent commissions.

9. In addition, on August 28, 2006, Prudential Financial, Inc. announced that it agreed to pay $600 million to settle civil and criminal allegations by the Department of Justice, the Securities and Exchange Commission and several other regulators that former workers at its brokerage unit defrauded mutual fund investors by helping clients rapidly trade funds.

10. The large fines and the accompanying negative publicity from the settlements referenced above have tarnished Prudential's reputation in the marketplace which materially adversely affects Prudential's ability to satisfy its obligations under the Marketing Agreement.

11. Pursuant to Section 4.0.3(iv), Clark may immediately terminate the Marketing Agreement for cause upon Prudential's failure to perform or observe any material term, covenant or agreement contained in the Marketing Agreement and any such failure shall remain unremedied for 30 days after the receipt from Clark of written notice thereof.

12. Prudential has breached Section 4.0.3(iv) of the Marketing Agreement for at least three reasons. First, the Marketing Agreement required that Prudential work with Clark to implement two products on Clark's CBIS illustration system ("CBIS") at a credit of $150,000 each to the Marketing Meeting Expense Allowance. Prudential's failure to work with Clark to place Prudential's products on CBIS violated a material term of the Marketing Agreement and significantly impaired Clark's ability to market and sell Prudential products.

13. Second, Prudential's failure to attend certain conferences to which it was invited by Clark violated the intent of the Marketing Agreement to reduce the unused Marketing Meeting Expense Allowance through such attendance and promote Prudential products to Clark prospects who attended such meetings.

14. Third, during the term of the Marketing Agreement, Prudential caused Clark to lose revenue through its involvement in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies. By making these exchanges, Prudential violated the express terms of Article 7.0 of the Marketing Agreement pursuant to which the parties agreed that, with respect to the fulfillment of their respective duties and obligations under the Marketing Agreement, each would conduct itself in accordance with the highest standards of good faith, fair dealing, and commercial reasonableness and further violated the duty of good faith and fair dealing implied in every contractual agreement under Illinois law.

15. The Marketing Agreement specifically provides that, in entering into the agreement, Prudential irrevocably waived the Clark Consulting obligation to pay the $2.9 million that was previously

due and payable to Prudential with respect to the surrender of the Allmerica Group COLI/TOLI contracts. See Ex. "A" at Section 1.0.1.

16. The Marketing Agreement further specifically provides that, in consideration for that waiver, Clark granted to Prudential a $ 3.5 million Marketing Meeting Expense Allowance to be used solely towards sponsorship of the Conferences identified in the contract, and that, except as otherwise provided in Article 5.0 of the Marketing Agreement, the Marketing Meeting Expense Allowance has no immediately redeemable value and could only be used as credit toward future conference fees. See Ex. "A" at Section 1.0.2.

17. Article 5.0 of the Marketing Agreement defines the limited circumstances under which Prudential has the right to opt out of the Marketing Agreement and receive some monetary reimbursement from Clark as opposed to continuing under the terms of the contract to attend the conferences as its only means of recouping the Allmerica commissions. One of those limited and defined circumstances is "in the event that it otherwise becomes 'impossible' for Prudential to participate in some or all of the Conferences." Ex. "A" at Section 5.0.1.

18. "Impossible is defined in the contract as follows: "'Impossible' shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement...has been terminated; or (c) Prudential has withdrawn from the COLI business. The contract further expressly states that "Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience." Id.

19. It has not become "impossible" for Prudential to participate in some or all of the Conferences. The contract does not permit Prudential to create an "impossibility" by instigating the unilateral termination of the PIMS Agreement, as was done here, as such conduct was "for its own convenience" and thus constituted a breach of the terms of the Marketing Agreement.

20. The Marketing Agreement specifies in detail the differing monetary recompense to which Prudential will be entitled from Clark if (1) "impossibility" occurs or (2) if Prudential terminates for cause. The Marketing Agreement does not provide for any recompense for Prudential in the event that Clark

4

terminates the contract for cause.

21. By letter dated December 28, 2006, pursuant to Section 4.0.3 of the Marketing Agreement, Clark terminated the Marketing Agreement for cause and, under the terms of the Marketing Agreement, Clark now has no further obligations remaining to Prudential, including, but not limited to, payment of any portion of the Unused Marketing Meeting Expense Allowance pursuant to Section 5.0.2 or Section 5.0.3 of the Marketing Agreement.

## COUNT ONE– BREACH OF CONTRACT

22. Clark realleges and incorporates by reference as if set forth in full herein the allegations of paragraphs 1-21, above.

23. Prudential breached the express terms of the Marketing Agreement by failing to respond promptly, if at all, to requests for illustrations and product support, materially violating rules and regulations which materially adversely affected Prudential's ability to satisfy its obligations under the Marketing Agreement, failing to perform or observe material terms, covenants, or agreements contained within the Marketing Agreement, attempting to terminate the contract for its own convenience, and participating in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies.

25. Additionally, Prudential breached the covenant of good faith and fair dealing implied in every Illinois contract by instigating the unilateral termination of the PIMS Agreement in an effort to create its own "impossibility" and avoid its obligations under the Marketing Agreement for its own convenience and by participating in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies.

26. Prudential's incorrect interpretation of Article 5.0 of the Marketing Agreement so as to permit its conduct renders the contract illusory and nullifies, rather than supports, the contract as written.

27. As a result of such breaches, and the refusal of Prudential to participate further in the Marketing Conferences, Clark had the right to terminate the Marketing Agreement for cause, and owes no further obligation to Prudential under the terms of the Marketing Agreement.

28. Further, as a result of Prudential's breach of the Marketing Agreement and of its implied duty of good faith and fair dealing, Clark has suffered severe financial damages including the lost of anticipated revenue with a total value of $ 54,953,816.00 and a net present value of $ 24,378,647.00.

WHEREFORE, Defendant prays that Plaintiff take nothing by reason of its Complaint, that this Court issue Judgment in favor of Clark in the amount of its total financial damages resulting from Prudential's breach of the Marketing Agreement as set forth herein, that the Plaintiff's unjust enrichment count be dismissed, and further, that Defendant be allowed to recover all other relief that the Court finds reasonable and proper, including, without limitation, reasonable costs and expenses, and attorney's fees incurred in this proceeding.

## JURY DEMAND

Clark hereby requests a jury for all of Prudential's claims against Clark which are triable to a jury and a jury on Clark's claims against Prudential.

Dated: February 20, 2008					CLARK CONSULTING, INC.

							By: /s/ Gregory R. James, Jr.
							      Gregory R. James, Jr.

							Gregory R. James, Jr. (06198667)
							Laner, Muchin, Dombrow, Becker,
							Levin and Tominberg, Ltd.
							515 North State Street, Suite 2800
							Chicago, Illinois 60610
							(312) 467-9800, (312) 467-9479 (fax)
							gjames@lanermuchin.com

							Tara Hanley
							Dale G. Markland
							Markland Hanley LLP
							2200 Ross Avenue, Suite 4100W
							Dallas, Texas 75201
							469.341.3633 (main), 469.341.3640 (fax)
							thanley@marklandhanley.com
							dmarkland@marklandhanley.com

6

## CERTIFICATE OF SERVICE

Gregory R. James, Jr., an attorney, hereby certifies that he caused the Defendant's First Amended Counter Claim in the above-captioned matter to be served on the parties of record listed below, via Electronic Filing to Lisa Kane, through the U.S. District Court, Northern District of Illinois on this 20th day of February 2008, addressed to:

**Donald J. Munro**
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4137
Email: dmunro@goodwinprocter.com

**Daniel J. Mohan**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312)422-9999
Fax:312-201-9368
Email: mohan@daleymohan.com

**Joel B. Cornfeld**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312)422-0784
Fax:(312)201-9368
Email: jcornfeld@daleymohan.com

**Raymond Hugo Groble, III**
Daley Mohan Groble P.C.
55 W. Monroe
Suite 1600
Chicago, IL 60603
(312)422-9999
Fax:(312)201-9368
Email: groble@daleymohan.com

**Sean M. Sullivan**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312)422-9999
Fax:(312)422-5370
Email: ssullivan@daleymohan.com

**William Joseph McFadden**
Daley Mohan Groble PC
55 West Monroe Street
Suite 1600
Chicago, IL 60603-5001
(312)422-6522
Fax:(312)201-9368
Email: wmcfadden@daleymohan.com

/s/ Gregory R. James, Jr.
Gregory R. James, Jr.