**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **THE PRUDENTIAL INSURANCE COMPANY** ) | |
| **OF AMERICA** ) | |
| **751 Broad Street** ) | |
| **Newark, NJ 07102** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 07-C-6868** |
| ) | **Hon. Ruben Castillo** |
| **CLARK CONSULTING, INC.** ) | |
| **102 South Wynstone Park Drive** ) | |
| **North Barrington, IL 60010** ) | |
| ) | |
| **Defendant.** ) | |

**ANSWER TO FIRST AMENDED COUNTER-CLAIM**

The Prudential Insurance Company of America ('Prudential") hereby answers the first

amended counterclaim ("Counterclaim") brought by Clark Consulting, Inc. ("Clark") in Civil

Action No. 07-c-6868 as follows:

**First Defense**

Prudential denies all of the allegations of the Counterclaim unless expressly admitted

herein.  Prudential answers the allegations in the like-numbered paragraphs of Clark's

Counterclaim as follows:

**Paragraph 1**

Section 4.03(v) of the Amended and Restated Prepaid Marketing Meeting Expense
Agreement ("Marketing Agreement") provides that Clark may immediately terminate the
Marketing Agreement for cause upon Prudential's failure to respond promptly to requests for
illustrations and product support.  "Failure to respond promptly" means failure to respond by the
mutually agreeable deadline for a response negotiated by Prudential and Clark and documented
in writing at the time of the request for illustrations and/or product support.

**Answer**

Prudential admits that Section 4.03(v) of the Prepaid Marketing Expense Agreement ("Marketing Agreement") sets forth grounds for termination of the Marketing Agreement, avers that the terms of the Marketing Agreement speak for themselves, and otherwise denies the allegations of Paragraph 1.

## Paragraph 2

Subsequent to the effective date of the Marketing Agreement, Prudential entered into a preferential marketing arrangement with Jerry Reen, a significant competitor of Clark.

## Answer

Prudential admits that it has a non-exclusive broker relationship with Jerry Reen, who markets, among other things, Prudential's COLI/TOLI products, and otherwise denies the allegations of Paragraph 2.

## Paragraph 3

As a result of its actions in support of this arrangement, Prudential failed to respond promptly to requests for illustrations and product support. Specifically, during the term of the Marketing Agreement, individuals at Clark requested BOLI illustrations from Prudential for a number of banks, and Prudential communicated to Clark its intent to deliver such illustrations. Due to its preferential marketing arrangement with Mr. Reen, however, Prudential later refused to deliver or provide all necessary illustrations for a number of banks, which include, but are not limited to, New Alliance, Western Alliance/Bank West Nevada, Sovereign Bank, Dime Savings Bank, and Webster Bank.

## Answer

Prudential denies the allegations of Paragraph 3.

## Paragraph 4

For other banks, Prudential purposefully provided non-competitive illustrations to Clark, in order to put Mr. Reen at a competitive advantage in the marketplace. Such banks include, but are not limited to, California National Bank, Bank of Hawaii, and Central Pacific Bank.

## Answer

Prudential denies the allegations of Paragraph 4.

## Paragraph 5

Finally, for certain banks, Prudential refused to provide Clark with any quote at all due to Prudential's arrangement with Mr. Reen. Such banks include, but are not limited to, First Midwest, Sterling Bank, Stillwater National and OMNI.

## Answer

Prudential denies the allegations of Paragraph 5.

## Paragraph 6

Due to Prudential's preferential arrangement with Mr. Reen, Prudential has repeatedly failed to respond promptly, if at all, to Clark's requests for illustrations and product support.

## Answer

Prudential denies the allegations of Paragraph 6.

## Paragraph 7

Under Section 4.0.3(iii), Clark may immediately terminate the Marketing Agreement for cause upon any material violation by Prudential or its officers, employees or agents of any rule or regulation of any regulatory authority having jurisdiction which would materially adversely affect Prudential's ability to satisfy its obligations under the Marketing Agreement.

## Answer

Prudential admits that Section 4.03(iii) of the Marketing Agreement sets forth grounds

for termination of the Marketing Agreement, avers that the terms of the Marketing Agreement

speak for themselves, and otherwise denies the allegations of Paragraph 7.

## Paragraph 8

On December 12, 2006, Prudential announced that it reached separate settlements with the New York Attorney General and the California Department of Insurance in connection with investigations into regulatory violations regarding Prudential's payment of contingent commissions to its producers. Prudential agreed to pay $2.5 million to the State of New York

and $16.5 million to a compensation fund for affected group insurance policyholders.  Prudential also agreed to change its business practices and discontinue paying contingent commissions.

**Answer**

Prudential admits that, on or about December 12, 2006, Prudential settled disputes with certain governmental regulatory entities concerning contingent commissions, avers that the terms of those settlement agreements speak for themselves, and otherwise denies the allegations of Paragraph 8.

**Paragraph 9**

In addition. On August 28, 2006, Prudential Financial, Inc. announced that it agreed to pay $600 million to settle civil and criminal allegations by the Department of Justice, the Securities and Exchange Commission and several other regulators that former workers at its brokerage unit defrauded mutual fund investors by helping clients rapidly trade funds.

**Answer**

Prudential admits that, on or about August 28, 2006, Prudential Financial, Inc. settled disputes with certain governmental regulatory entities concerning market-timing trading, avers that the terms of those settlement agreements speak for themselves, and otherwise denies the allegations of Paragraph 9.

**Paragraph 10**

The large fines and the accompanying negative publicity from the settlements referenced above have tarnished Prudential's reputation in the marketplace which materially adversely affects Prudential's ability to satisfy its obligations under the Marketing Agreement.

**Answer**

Prudential denies the allegations of Paragraph 10.

**Paragraph 11**

Pursuant to Section 4.0.3(iv), Clark may immediately terminate the Marketing Agreement for cause upon Prudential's failure to perform or observe any material term, covenant or agreement contained in the Marketing Agreement and any such failure shall remain unremedied for 30 days after the receipt from Clark of written notice thereof.

**Answer**

Prudential admits that Section 4.03(iv) of the Marketing Agreement sets forth grounds for

termination of the Marketing Agreement, avers that the terms of the Marketing Agreement speak

for themselves, and otherwise denies the allegations of Paragraph 11.

**Paragraph 12**

Prudential has breached Section 4.0.3(iv) of the Marketing Agreement for at least three reasons. First, the Marketing Agreement required that Prudential work with Clark to implement two products on Clark's CBIS illustration system ("CBIS") at a credit of $150,000 each to the Marketing Meeting Expense Allowance. Prudential's failure to work with Clark to place Prudential's products on CBIS violated a material term of the Marketing Agreement and significantly impaired Clark's ability to market and sell Prudential products.

**Answer**

Prudential denies the allegations of Paragraph 12.

**Paragraph 13**

Second, Prudential's failure to attend certain conferences to which it was invited by Clark violated the intent of the Marketing Agreement to reduce the unused Marketing Meeting Expense Allowance through such attendance and promote Prudential products to Clark prospects who attended such meetings.

**Answer**

Prudential denies the allegations of Paragraph 13.

**Paragraph 14**

Third, during the term of the Marketing Agreement, Prudential caused Clark to lose revenue through its involvement in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies.  By making these exchanges, Prudential violated the express terms of Article 7.0 of the Marketing Agreement pursuant to which the parties agreed that, with respect to the fulfillment of their respective duties and obligations under the Marketing Agreement, each would conduct itself in accordance with the highest standards of good faith, fair dealing, and commercial reasonableness and further violated the duty of good faith and fair dealing implied in very contractual agreement under Illinois law.

**Answer**

Prudential avers that the terms of Section 7.0 of the Marketing Agreement speak for

themselves, and otherwise denies the allegations of Paragraph 14.

**Paragraph 15**

The Marketing Agreement specifically provides that, in entering into the agreement, Prudential irrevocably waived the Clark Consulting obligation to pay the $2.9 million that was previously due and payable to Prudential with respect to the surrender of the Allmerica Group COLI/TOLI contracts.  See Ex. "A" at Section 1.0.1.

**Answer**

Prudential avers that the terms of Section 1.0.1 of the Marketing Agreement speak for

themselves, and otherwise denies the allegations of Paragraph 15.

**Paragraph 16**

The Marketing Agreement further specifically provides that, in consideration for that waiver, Clark granted to Prudential a $3.5 million Marketing Meeting Expense Allowance to be used solely towards sponsorship of the Conferences identified in the contract, and that, except as otherwise provided in Article 5.0 of the Marketing Agreement, the Marketing Meeting Expense Allowance has no immediately redeemable value and could only be used as credit toward future conference fees.  See Ex. "A" at Section 1.0.2.

**Answer**

Prudential avers that the terms of Section 1.0.2 of the Marketing Agreement speak for themselves, and otherwise denies the allegations of Paragraph 16.

## Paragraph 17

Article 5.0 of the Marketing Agreement defines the limited circumstances under which Prudential has the right to opt out of the Marketing Agreement and receive some monetary reimbursement from Clark as opposed to continuing under the terms of the contract to attend the conferences as its only means of recouping the Allmerica commissions. One of these limited and defined circumstances is "in the event that it otherwise becomes 'impossible' for Prudential to participate in some or all of the Conferences." Ex. "A" at Section 5.0.1.

### Answer

Prudential avers that the terms of Section 5 of the Marketing Agreement speak for themselves, and otherwise denies the allegations of Paragraph 17.

## Paragraph 18

"Impossible is defined in the contract as follows: "'Impossible' shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement . . . has been terminated, or (c) Prudential has withdrawn from the COLI business. The contract further expressly states that "Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience." Id.

### Answer

Prudential avers that the terms of Section 5 of the Marketing Agreement speak for themselves, and otherwise denies the allegations of Paragraph 18.

## Paragraph 19

It has not become "impossible" for Prudential to participate in some or all of the Conferences. The contract does not permit Prudential to create an "impossibility" by instigating the unilateral termination of the PIMS Agreement, as was done here, as such conduct was "for its own convenience" and thus constituted a breach of the terms of the Marketing Agreement.

### Answer

Prudential denies the allegations of Paragraph 19.

**Paragraph 20**

The Marketing Agreement specifies in detail the differing monetary recompense to which Prudential will be entitled from Clark if (1) "impossibility" occurs or (2) if Prudential terminates for cause.  The Marketing Agreement does not provide for any recompense for Prudential in the event that Clark terminates the contract for cause.

**Answer**

Prudential avers that the terms of Section 5 of the Marketing Agreement speak for

themselves, and otherwise denies the allegations of Paragraph 20.

**Paragraph 21**

By letter dated December 28, 2006, pursuant to Section 4.0.3 of the Marketing Agreement, Clark terminated the Marketing Agreement for cause and, under the terms of the Marketing Agreement, Clark now has no further obligations remaining to Prudential, including, but not limited to, payment of any portion of the Unused Marketing Meeting Expense Allowance pursuant to Section 5.0.2 or Section 5.0.3 of the Marketing Agreement

**Answer**

Prudential admits that on or about December 28, 2006, Clark sent a letter to Prudential

purporting to terminate the Marketing Agreement pursuant to Section 4.0.3, denies that such

notice of termination was valid or effective, and otherwise denies the allegations of Paragraph

21.

**Paragraph 22**

Clark alleges and incorporates by reference as if set forth in full herein the allegations of paragraphs 1-21, above.

**Answer**

Prudential alleges and incorporates by reference as if set forth in full herein its answers to

the allegations of Paragraphs 1-21, above.

**Paragraph 23**

Prudential breached the express terms of the Marketing Agreement by failing to respond promptly, if at all, to requests for illustrations and product support, materially violating rules and regulations which materially adversely affected Prudential's ability to satisfy its obligations under the Marketing Agreement, failing to perform or observe material terms, covenants, or agreements contained within the Marketing Agreement, attempting to terminate the contract for its own convenience, and participating in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies.

**Answer**

Prudential denies the allegations of Paragraph 23.


**Paragraph 25 (sic)**

Additionally, Prudential breached the covenant of good faith and fair dealing implied in every Illinois contract by instigating the unilateral termination of the PIMS Agreement in an effort to create its own "impossibility" and avoid its obligations under the Marketing Agreement for its own convenience and by participating in the exchange of (i) insurance policies for which Clark or a Clark representative was the broker or agent of record for (ii) Prudential policies.

**Answer**

Prudential denies the allegations of Paragraph 25.


**Paragraph 26**

Prudential's incorrect interpretation of Article 5.0 of the Marketing Agreement so as to permit its conduct renders the contract illusory and nullifies, rather than supports, the contract as written.

**Answer**

Prudential denies the allegations of Paragraph 26.


**Paragraph 27**

As a result of such breaches, and the refusal of Prudential to participate further in the Marketing Conferences, Clark had the right to terminate the Marketing Agreement for cause, and owes no further obligation to Prudential under the terms of the Marketing Agreement.

**Answer**

Prudential denies the allegations of Paragraph 27.

**Paragraph 28**

Further, as a result of Prudential's breach of the Marketing Agreement and of its implied duty of good faith and fair dealing, Clark has suffered severe financial damages including the lost of anticipated revenue with a total value of $ 54,953,816.00 and a net present value of $ 24,378,647.00.

**Answer**

Prudential denies the allegations of Paragraph 28.

**Second Defense**

The Counterclaim fails to state a claim on which relief may be granted.

**Third Defense**

The Agreement provides no right of recovery for Clark even if Clark had properly terminated the Agreement for cause.

**Fourth Defense**

Prudential is entitled to a set-off against any recovery by Clark.

**Fifth Defense**

Clark failed to mitigate its damages.

**PRAYER FOR RELIEF**

WHEREFORE, Prudential respectfully request that this Court dismiss Clark's first amended counterclaim and grant such other and further relief, including costs and attorney's fees, as may be deemed just and appropriate.

Respectfully submitted,

ATTORNEYS FOR THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA

/s/ Donald J. Munro
Donald J. Munro
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, D.C. 20001
Telephone: 202-346-4137
Facsimile: 202-346-4444

/s/ Daniel J. Mohan
Daniel J. Mohan
DALEY MOHAN GROBLE, P.C.
55 West Monroe, Suite 1600
Chicago, IL 60603
Telephone: 312-422-9999
Facsimile: 312-422-5370
Attorney No. 6187721

/s/ William J. McFadden
William J. McFadden
DALEY MOHAN GROBLE, P.C.
55 West Monroe, Suite 1600
Chicago, IL 60603
Telephone: 312-422-9999
Facsimile: 312-422-5370
Attorney No. 627661

## <u>CERTIFICATE OF SERVICE</u>

I, William J. McFadden, an attorney, state that on February 29, 2008, I served true and correct copies of the foregoing **ANSWER TO FIRST AMENDED COUNTER-CLAIM** upon the following attorneys of record via the Court's CM/ECF filing system and by U.S. Mail by depositing the same in the U.S. Post Office box located at 55 West Monroe, Chicago, Illinois:

> Dale G. Markland, Esq.
> Tara E. Hanley, Esq.
> MARKLAND HANLEY LLP
> 2200 Ross Avenue, Suite 4100W
> Dallas, TX 75201
>
> Gregory Robert James, Jr., Esq.
> Thomas Stephen Bradley, Esq.
> LANER, MUCHIN, DOMBROW, BECKER
> 515 North State Street, Suite 2800
> Chicago, IL 60610

<u>/s/ William J. McFadden</u>
William J. McFadden
DALEY MOHAN GROBLE, P.C.
55 West Monroe, Suite 1600
Chicago, IL 60603
Telephone: 312-422-9999
Facsimile:  312-422-5370
Attorney No. 627661
