IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY )<br>OF AMERICA )<br>751 Broad Street )<br>Newark, NJ 07102 )<br>)<br>    **Plaintiff,** )<br>)<br>vs. )<br>)<br>CLARK CONSULTING, INC. )<br>102 South Wynstone Park Drive )<br>North Barrington, IL 60010 )<br>)<br>    **Defendant.** ) | Civil Action No. 07-C-6868<br>Hon. Ruben Castillo |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a)(3), plaintiff The Prudential Insurance Company of America ("Prudential") hereby submits that the following facts are undisputed:

1. This Court has jurisdiction over this action under 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. First Amended Complaint ("Compl.") ¶ 3; Answer ¶ 3.

2. Venue in this Court is proper because the defendant has operations in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Compl. ¶ 4; Answer ¶ 4.

3. Plaintiff Prudential is a life insurance company that issues and administers insurance contracts, including corporate-owned life insurance ("COLI") contracts and trust-owned life insurance ("TOLI") contracts. Compl. ¶ 5; Answer ¶ 5.

4.     Defendant Clark Consulting, Inc. ("Clark") is a company that, among other things, acts as a broker for the sale of COLI and TOLI insurance contracts. Compl. ¶ 6; Answer ¶ 6. Clark was recently acquired by and is now a wholly owned indirect subsidiary of AEGON USA, Inc. *Id.*

5.     On or about September 26, 2000, Prudential Investment Management Services LLC ("PIMS"), an affiliate of Prudential, and Clark/Bardes Securities, Inc. (now Clark Securities, Inc. or "CSI"), a subsidiary of Clark, entered into a Broker-Dealer Agreement (the "PIMS Agreement"). Compl. ¶ 7; Answer ¶ 7. The PIMS Agreement was subsequently amended and restated on January 24, 2002, and again on January 5, 2004, and was further amended effective December 20, 2005. *Id.* A true and correct copy of the January 5, 2004 version of the PIMS Agreement and the December 20, 2005 amendment are attached hereto as Exhibit A.

6.     The PIMS Agreement established the terms under which Clark would attempt to sell Prudential COLI and TOLI contracts to third-party purchasers. Compl. ¶ 8; Answer ¶ 8. It provided, *inter alia*, that CSI would "market, solicit, procure, and submit applications for COLI/TOLI Contracts," in exchange for which PIMS would pay commissions for each COLI or TOLI contract sold to a third-party purchaser. *See Id.*; Exhibit A at 1, 3-6.

7.     The PIMS Agreement further provides as follows:

> "If Prudential returns, for any reason, any premiums or purchase payments on the COLI/TOLI Contract, Broker will have an immediate obligation to, and will upon demand, repay PIMS all the compensation (including Initial Sales Commissions, Running Sales Commissions and Service Commissions) previously received by Broker with respect to returned premiums or purchase payments."

Exhibit A at 5; Answer ¶ 8.

8.      The PIMS Agreement contains a section entitled "Termination," which provides as follows:

> "Either party may terminate this Agreement at any time by giving the other party notice thereof in writing, termination to be effective 30 days after receipt of such notice. This Agreement shall terminate automatically, effective immediately, in the event of any breach of Sections 1, 2, 3, 4, 6 or 7, or if any of the representations and warranties of Broker contained in Section 6 are not true and correct in all respects at such time that it affects or limits Broker's ability to act as a broker-dealer; but no termination shall affect the obligations of Broker pursuant to Sections 5.5.2, 5.6, 6.3., 17 or 18."

Exhibit A at 10; Answer ¶ 9.

9.      After entering into the PIMS Agreement, CSI and its selling agents procured a third party, Allmerica, as the purchaser of Prudential Group COLI/TOLI contracts. Answer ¶ 10. Prudential paid commissions to Clark for that sale. *Id.* The commission schedule for the Allmerica contracts provided, *inter alia*, that "PIMS may charge-back, and Broker shall be obligated to repay, any Unearned Supplemental Initial Sales Commissions or Unearned Heaped Running Sales Commissions" in the event of termination of or withdrawal from the COLI/TOLI contracts. *Id.*

10.     On or about October 31, 2003, Allmerica tendered its COLI/TOLI contracts for surrender. Compl. ¶ 11; Answer ¶ 11.

11.     As a consequence of Allmerica's surrender of its contracts, Clark was obligated to repay to Prudential an amount equal to the unearned commissions. Compl. ¶ 12; Answer ¶ 12.

12.     The parties agreed to seek an alternative to immediate repayment of the commissions on the Allmerica contracts. Compl. ¶ 13; Answer ¶ 13.

13.     As a result of discussions between Prudential and Clark concerning the Allmerica commission repayment obligation, the parties entered into a new agreement known as the Prepaid Marketing Meeting Expense Agreement (the "Marketing Agreement"), effective

December 29, 2003, which was amended effective December 29, 2004. Compl. ¶ 14; Answer ¶ 14. A true and correct copy of the Marketing Agreement, as amended effective December 29, 2004, is attached hereto as Exhibit B.

14. The Marketing Agreement provided, *inter alia*, for a waiver by Prudential of the Clark obligation to pay the amount due with respect to the surrender of Allmerica Group COLI/TOLI contracts. In exchange, Clark granted to Prudential a "$3.5 million Marketing Meeting Expense Allowance." Exhibit B § 1.0.2; Answer ¶ 15.

15. The Marketing Agreement provided that

> "While this Agreement is in effect, Clark Consulting will waive the Conference Fees charged each year by Clark Consulting for attendance at the Conferences until such time as the Marketing Meeting Expense Allowance is exhausted. The amount waived will be the actual conference fee charged to similarly situated insurance company participants (anticipated to be $225,000 in 2004). The unused Marketing Meeting Expense Allowance will be reduced by the amount of Conference Fees waived."

Exhibit B § 2.0; Answer ¶ 15.

16. Section 4 of the Agreement, entitled "Term and Termination," sets forth five separate reasons why either party may terminate the Agreement "for cause." Compl. ¶ 16; Answer ¶ 16; Exhibit B at 2.

17. Section 5 of the Agreement, entitled "Compensation for Prudential's Failed Expectations," provides in part as follows:

> "5.0.1 In the event that some or all of the Conferences are discontinued without successors or in the event that it otherwise becomes impossible for Prudential to participate in some or all of the Conferences, Clark Consulting shall pay Prudential compensation as determined under Section 5.0.2 for its failed expectations.
>
> 'Impossible' shall mean any of the following: (a) Prudential is unable to participate because of circumstances beyond its control; (b) the PIMS Agreement (which is being amended and restated contemporaneously with the execution of this Agreement) has been terminated; or (c) Prudential has withdrawn from the

    COLI business.  Impossible shall not include a decision by Prudential not to participate for purposes of its own convenience.

    5.0.2   In the event of Prudential's failed expectations under Section 5.0.1, Clark Consulting shall pay Prudential an amount equal to the Unused Marketing Meeting Expense Allowance.  The Unused Marketing Meeting Expense Allowance is defined as the Marketing Meeting Expense Allowance reduced by the cumulative amount of Conference Fees waived."

Exhibit B at 4; Compl. ¶ 17; Answer ¶ 17.

    18.    From the end of 2003 until the end of 2006, Prudential attended five (5) conferences arranged by Clark.  Answer ¶ 18.

    19.    On or about December 1, 2006, PIMS sent a letter to Clark terminating the PIMS Agreement pursuant to Section 13 of that Agreement, effective December 31, 2006.  Answer ¶ 19.

    20.    On or about December 19, 2006, Prudential notified Clark in writing that, it was terminating the Marketing Agreement in light of the termination of the PIMS Agreement. Compl. ¶ 21; Answer ¶ 21.  Prudential requested payment of $3,241,000.  *Id.*

    21.    Clark refused Prudential's demand for payment under Section 5.0 of the Agreement.  Compl. ¶ 22; Answer ¶ 22.  Rather, it sent a letter to Prudential, dated December 28, 2006, in which it denied, *inter alia*, that "it has become impossible for Prudential to participate in the conferences under the terms of the Agreement."  *Id.*

    22.    To date, Clark continues to refuse payment of the $3,241,000 sought by Prudential.  Compl. ¶ 24; Answer ¶ 24.

5

Respectfully submitted,

ATTORNEYS FOR THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA

/s/ Donald J. Munro
Donald J. Munro
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, D.C. 20001
Telephone: 202-346-4137
Facsimile: 202-346-4444

/s/ Daniel J. Mohan
Daniel J. Mohan
DALEY MOHAN GROBLE, P.C.
55 West Monroe, Suite 1600
Chicago, IL 60603
Telephone: 312-422-9999
Attorney No. 6187721

/s/ William J. McFadden
William J. McFadden
DALEY MOHAN GROBLE, P.C.
55 West Monroe, Suite 1600
Chicago, IL 60603
Telephone: 312-422-9999
Attorney No. 6276661

March 17, 2008

## CERTIFICATE OF SERVICE

I, William J. McFadden, an attorney, state that on March 17, 2008, I served true and correct copies of the foregoing **PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** upon the following attorneys of record via the Court's CM/ECF filing system and by U.S. Mail by depositing the same in the U.S. Post Office box located at 55 West Monroe, Chicago, Illinois:

    Dale G. Markland, Esq.
    Tara E. Hanley, Esq.
    MARKLAND HANLEY LLP
    2200 Ross Avenue, Suite 4100W
    Dallas, TX 75201

    Gregory Robert James, Jr., Esq.
    Thomas Stephen Bradley, Esq.
    LANER, MUCHIN, DOMBROW, BECKER
    515 North State Street, Suite 2800
    Chicago, IL 60610

    /s/ William J. McFadden
    William J. McFadden
    DALEY MOHAN GROBLE, P.C.
    55 West Monroe, Suite 1600
    Chicago, IL 60603
    Telephone: 312-422-9999
    Facsimile:  312-422-5370
    Attorney No. 627661