MHW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PRUDENTIAL INSURANCE CO. OF AMERICA, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 07 C 6868 |
| CLARK CONSULTING, INC. ) ) | Judge Ruben Castillo |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The Prudential Insurance Company of America ("Prudential") filed a complaint against Clark Consulting, Inc. ("Clark") alleging breach of contract, and alternatively, unjust enrichment. (R. 20, First Am. Compl. ("FAC").) Before this Court is Clark's motion to dismiss the unjust enrichment claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 30, Clark's Mot. to Dismiss.) For the foregoing reasons, the motion is denied.

### RELEVANT FACTS[1]

Prudential is a life insurance company that issues and administers insurance contracts, including corporate-owned life insurance ("COLI") contracts and trust-owned life insurance ("TOLI") contracts. (R. 20, FAC ¶ 5.) Prudential is incorporated in New Jersey and has its principal place of business in Newark, New Jersey. (*Id.*) Clark is a company that, among other things, acts as a broker for the sale of COLI and TOLI contracts. (*Id.* ¶ 6.) Clark is incorporated

---

[1] In determining whether to grant a motion to dismiss, the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007).

1

in Delaware and has its principal place of business in Illinois. (*Id.*) Prudential alleges that, on information and belief, Clark was recently acquired by and is now a wholly owned indirect subsidiary or affiliate of AEGON USA., Inc. ("AEGON"), an insurance company that competes with Prudential in, among other areas, COLI and TOLI contracts. (*Id.*)

On or about September 26, 2000, Prudential Investment Management Services, Inc. ("PIMS"), an affiliate of Prudential, and Clark Securities, Inc. ("CSI"), a subsidiary of Clark, entered into a broker-dealer agreement (the "PIMS Agreement"), which was subsequently amended and restated on January 24, 2002, January 5, 2004, and December 20, 2005. (*Id.* ¶ 7.) Under the terms of the PIMS Agreement, Clark was obligated to "market, solicit, procure, and submit applications" for Prudential life insurance contracts and in exchange would receive commissions for each contract sold to third-parties. (*Id.* ¶ 8.) The PIMS Agreement further provided: "If Prudential returns, for any reason, any premiums or purchase payments on the COLI/TOLI Contract, [Clark] will have an immediate obligation to, and will upon demand, repay PIMS all the compensation . . . previously received by [Clark] with respect to returned premiums or purchase payments." (*Id.*) The PIMS Agreement also contained a termination provision, which permitted either party to terminate the agreement at any time by giving a written, 30-day notice to the other party, and describing the effect of such termination. (*Id.* ¶ 9.)

After entering into the PIMS Agreement, CSI procured a third party, Allmerica, to purchase two Prudential Group COLI/TOLI contracts. (*Id.* ¶ 10.) Prudential paid commissions to Clark for the purchase. (*Id.*) The commission schedule for the Allmerica contracts provided that PIMS could "charge-back" unearned commissions if the life insurance contracts were terminated or withdrawn. (*Id.*) On or about October 31, 2003, Allmerica surrendered its life

insurance contracts. (*Id.* ¶ 11.) Prudential alleges that as a result Clark became obligated to repay Prudential the unearned commissions. (*Id.* ¶¶ 11-12.) Even with such repayment, however Prudential faced substantial loss, equal to the amount by which its unamortized commission expenses exceeded Clark's repayment obligation. (*Id.* ¶ 13.) Thus, the parties agreed to seek an alternative to immediate repayment of the unearned commissions on the Allmerica contracts. (*Id.*)

As a result of discussions between the parties, Prudential and Clark entered into a "Prepaid Marketing Meeting Expense Agreement" (the "Marketing Agreement"), which took effect December 29, 2003. (*Id.* ¶ 14 & Ex. B.) The Marketing Agreement provided that Prudential waived Clark's obligation to repay the unpaid commissions, in exchange for which Clark granted Prudential a "$3.5 million Marketing Meeting Expense Allowance" (the "Allowance"). (*Id.* ¶ 15.) Prudential was entitled to use this Allowance to offset fees for conferences hosted by Clark that it attended. (*Id.*) The Marketing Agreement contained clauses permitting termination in certain circumstances, and providing for repayment by Clark of the remaining amount on the Allowance, including where it became "impossible" for Prudential to participate in the conferences hosted by Clark. (*Id.* ¶¶ 15-17.) Between 2003 and 2006, Prudential attended four conferences arranged by Clark; as a result, the Allowance was reduced from $3.5 million to approximately $3.2 million. (*Id.* ¶ 18.)

In late 2006, PIMS became aware of AEGON's pending acquisition of Clark. (*Id.* ¶ 19.) PIMS determined that the acquisition created an unacceptable conflict of interest with regard to Clark's obligations under the PIMS Agreement. (*Id.*) Accordingly, on December 1, 2006, PIMS exercised its right to terminate the PIMS Agreement. (*Id.*) Prudential asserts that upon

3

termination of the PIMS Agreement, it became "impossible" for Prudential to participate in the conferences hosted by Clark or otherwise obtain the value of the consideration due and owing under the Marketing Agreement. (*Id.* ¶ 20.) Thus, Prudential demanded that Clark pay Prudential the $3.2 million balance remaining on the Allowance. (*Id.* ¶¶ 19-21) On December 28, 2006, Clark sent a written response to Prudential, disagreeing that termination of the PIMS Agreement made it "impossible" for Prudential to participate in the conferences. (*Id.* ¶ 22.) In the same letter, Clark purported to terminate the Marketing Agreement immediately "for cause." (*Id.* ¶ 23.) Prudential asserts that Clark had no valid basis for terminating the Marketing Agreement. (*Id.*) To date, Clark has not paid Prudential the $3.2 million that Prudential claims to be owed. (*Id.* ¶ 24.)

## PROCEDURAL HISTORY

In December 2007, Prudential initiated this action against Clark. (R. 1, Compl.) In January 2008, Prudential filed an amended complaint seeking damages for breach of contract, or in the alternative, recovery under an unjust enrichment theory. (R. 20, FAC.) Count One alleges that Clark breached the Marketing Agreement and must pay Prudential damages in the amount of $3.2 million, the remaining value of the Allowance. (*Id.* ¶¶ 25-28.) Count Two alleges in the alternative that if there is no enforceable contractual obligation on the part of Clark to pay damages to Prudential, then Prudential is entitled to recover under the doctrine of unjust enrichment based on Clark's retention of unearned commissions totaling approximately $2.9

million. (*Id.* ¶¶ 29-32.) Clark moves to dismiss Count Two pursuant to Rule 12(b)(6),[2] arguing that "under Illinois law, the presence of an express contract nulls any quasi-contract claim arising out of the same subject matter."[3] (R. 31, Clark's Mem. in Supp. of Mot. to Dismiss at 3.)

## LEGAL STANDARDS

A well-pleaded complaint only need contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, the plaintiff must plead enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Dismissal is appropriate only if the complaint "fails to set forth enough facts to state a claim to relief that is plausible on it face." *Segal v. Geisha NYC, LLC*, 517 F.3d 501, 504 (7th Cir. 2008).

## ANALYSIS

Unjust enrichment is a "quasi-contract" theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results. *People ex. Rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); *Hayes Mech., Inc. v. First Indus., LLP*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). To state a claim for unjust enrichment, the plaintiff must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health*

---

[2] Clark has answered Count One of the FAC, denying the allegations therein, and also asserting a counterclaim against Prudential for breach of the Marketing Agreement. (R. 29, Clark's Answer & Counterclaim.) Prudential has moved for partial summary judgment as to Count One of the FAC; that motion is presently being briefed. (R. 58, Prudential's Mot. for Partial Summ. J.; R. 71, Minute Entry.)

[3] The Marketing Agreement provides that it is to be governed by and construed in accordance with Illinois law. (R. 20, FAC, Ex. B § 12.)

*Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). However, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004). "The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Id.* In Clark's view, this principle prevents Prudential from raising an unjust enrichment claim in this case. (R. 31, Clark's Mem. in Supp. of Mot. to Dismiss at 2-5.)

Clark cites numerous cases, many of them from state court, in which courts have dismissed unjust enrichment claims where the complaint also alleged a breach of contract claim. (R. 31, Clark's Mem. in Supp. of Mot. to Dismiss at 3-4.) As Prudential points out, however, the cases cited by Clark involve instances where a party improperly pled an unjust enrichment claim by referencing the contract within the claim, or by incorporating by reference other paragraphs in the complaint that assert the existence of a contract. *See, e.g., Guinn v. Hoskins Cheverolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) ("[W]hile a plaintiff may plead breach of contract in one count and unjust enrichment in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel."); *Hartigan*, 607 N.E.2d at 177 (plaintiff did not properly allege unjust enrichment claim where claim expressly asserted the existence of a contract between the parties).

As an initial matter, the Court notes that although we must look to Illinois law to resolve Prudential's claims on the merits, whether the FAC properly states a claim for relief is a question of *federal* law. *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary

that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."); *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777-78 (N.D. Ill. 2006) ("[P]leading under the Federal Rules is a *federal* procedural issue, not a matter of state law; therefore, this Court, even when applying state law, has to be cognizant of the notice pleading standards of federal court.") (emphasis in original). Under federal pleading standards, a plaintiff may plead claims in the alternative, even if the claims are contradictory. Fed. R. Civ. P. 8(d)(3); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 635 (7th Cir. 2001); *Cole-Haddon*, 454 F. Supp. 2d at 777.

While Count One alleges the existence of a contractual duty on the part of Clark to pay Prudential funds allegedly owing under the Marketing Agreement, Count Two alleges an unjust enrichment claim in the alternative. (R. 20, FAC ¶ 29.) Specifically, Prudential alleges, "In the alternative, even if there is no enforceable contractual obligation on the part of Clark to pay money damages to Prudential, Prudential is entitled to recover money from Clark under the equitable doctrine of unjust enrichment." (*Id.*) The Seventh Circuit has held, "While [plaintiffs] need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing," such as the use of "either-or" or "if-then" language. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). Prudential has done that in this case. Further, Count Two does not refer to, or incorporate by reference other allegations referring to, the contract between the parties, which has been the downfall of complaints in other cases. *See, e.g., Cole-Hadden, Ltd.*, 454 F. Supp. 2d at 777 (plaintiff did not properly plead quasi-contract claim in the alternative because the claim reasserted all allegations previously stated, including those alleging the existence of a contract); *Team Impressions, Inc.*,

7

No. 02-5325, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003) (unjust enrichment claim not properly pled in alternative because it was expressly premised on defendant's failure to fulfill contractual obligations); *Homestead Ins. Co. v. Chicago Transit Auth.*, No. 96-4570, 1997 WL 43232, at *4 (N.D. Ill. Jan. 23, 1997) (dismissing unjust enrichment claim because the claim "adopts by reference all the allegations in the contract claim . . . including paragraphs alleging an express contract between the parties.").

The law is clear that Prudential cannot *recover* under both a breach of contract theory and an unjust enrichment theory. *See Shaw v. Hyatt, Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006); *Utility Audit*, 383 F.3d at 689. Thus, if this Court determines in subsequent proceedings that an enforceable contract exists between the parties, then Prudential's unjust enrichment claim cannot stand.[4] At this stage, however, Prudential has properly alleged the unjust enrichment claim as an alternative to its breach of contract claim.

## CONCLUSION

For the reasons stated above, Clark's motion to dismiss (R. 30) is denied. The parties are directed to reevaluate their settlement positions in light of this opinion and to engage in renewed efforts to settle this case.

ENTERED:

Ruben Castillo
United States District Judge

Dated: April 28, 2008

---

[4] In its sur-reply, Prudential asserts that it offered to drop its unjust enrichment claim if Clark would stipulate that a binding and enforceable contract exists between the parties; according to Prudential, Clark declined to do so. (R. 48-2, Prudential's Sur-Reply at 1-2.)

8